IN THE UNITED STATES DISTRICT
COURT WESTERN DIVISION FOR THE
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| Michael Renz, Eric Calderaro, et. al, ) <br> Plaintiff ) <br> Attorneys: ) <br> Thomas Renz (Bar ID 98645) ) <br> 1907 W State St. #162 ) <br> Fremont, OH 43420 <br><br> & <br><br> Robert Gargasz (Bar ID 7136) <br> 1670 Cooper Foster Park Rd. <br> Lorain, OH 44053 <br><br> -vs- ) <br> ) <br> ) <br> ) <br> State of Ohio, Gov. Mike DeWine, Lance Himes, ) <br> ) <br> Defendant(s) ) <br> ) | CASE NO. 3:20-cv-1948 <br><br><br><br><br><br><br><br><br><br><br><br> JUDGE: Carr <br><br><br><br> MOTION FOR <br> PRELIMINARY <br> INJUNCTION |

1. The Plaintiffs humbly motion the Court for Preliminary Injunctive Relief until such time as the entirety of this case be decided by the Court. For purposes of this document Plaintiffs incorporate by reference all other documents and evidence submitted by the Plaintiffs to the Court in this action, particularly including the original complaint and previously submitted attachments. Specifically, we ask for preliminary injunctive relief against the following:

    a. Any actions that have been or could be taken by the Ohio Governor and/or Health Department that infringe upon any fundamental Constitutional Rights reviewed under the strict scrutiny standard of review including but not limited to: the right

2

      to work, freedom of assembly, freedom of religion, privacy, future house arrest orders, and takings without compensation.[1]

    b. All orders impacting the various rights protected by the Constitution or Law including but not limited to rights reviewed under rational, heightened, or intermediate levels of scrutiny.

    c. The continuation of the declaration of emergency based on the fact that the only plausible use of an emergency declaration is to enable executive action that would not otherwise be legal or Constitutional and such a declaration could not withstand even rational basis review in context of the current case.

## Preliminary Injunction

2. Under Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) & FRCP 65, the standard for preliminary injunction is showing: 1) a strong likelihood of success on the merits; 2) the possibility of irreparable injury; 3) the balance of hardships in its favor; 4) the advancement of public interest. The Supreme Court also noted that as an "alternative" approach to weighing these four factors: "a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." citing Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir.2007); *see also* Earth Island II, 442 F.3d at 1158." *Id.* at 677.

3. In conjunction with this complaint and motion for preliminary injunction, Plaintiffs have submitted indisputable evidence that: 1. The existing data does not in any way support a declaration of emergency; 2. The existing data is being presented in a way that is intentionally misleading; 3. That COVID-19 is roughly as dangerous as a seasonal influenza; 4. That nothing can be done to stop the spread of this disease; 5. The plaintiff's Constitutional rights have been and will continue to be violated under the guise of this unjustified "emergency" thus causing severe and irreparable harm[2]; 6. Not only has the

---

[1] *See Future Takings Without Just Compensation* in complaint. Also, we ask the court to recognize that the forced use of masks would qualify as a taking given that they are an expense and that the Governor of Ohio has no authority to levy a tax under emergency powers.
[2] Gomez v Toledo, 446 US 635, 638 (1980)

2

response to COVID-19 not been in the public interest, it has caused incalculable harm to the public[3]; and 7. the plaintiff's will succeed in the trial of this action.

## Emergency Declaration

4. To the Plaintiff's knowledge, the question of a threshold for declaration of a health emergency has never been evaluated in the Federal Courts but we believe that if ever a case existed to create such a threshold test, the response to COVID-19 is that case.

5. The declaration of an emergency is, in theory, only issued in extraordinary circumstances and is done so for the sole purpose of circumventing generally applicable legislative and executive procedures and/or law. Such circumvention of rights may occur in regard to either State or Federal law. While state law may allow for state laws and procedures to be abridged as is deemed appropriate by the state legislature and under a given State's particular Constitution, any abridgement of federal Constitutional rights would inherently be subject to federal law, judicial review, and precedent. Given that the exclusive purpose of an emergency declaration is abridging law and procedure—and thus rights—we believe that any emergency action taken that would impact any federal or Constitutional rights should be subject to strict scrutiny.

6. Federal Constitutional rights and federal law both take precedence over state law.[4] This is well established and beyond question. In Home Building & Loan Assn. v. Blaisdell, 290 U.S. 398 (1934) the Court stated, "Emergency does not increase constitutional power, nor diminish constitutional restrictions," which means that this principle applies during a health emergency. Given these well-established rules regarding the federal precedence and the fact that an emergency does not increase Constitutional power, we believe any action taken under the guise of an emergency that impacts or inhibits Constitutional rights or even federal law must be viewed with suspicion so as to ensure the preservation of rights occurs in situations where that preservation is most at risk. This risk squarely occurs during a health emergency and so when state actions taken under such an emergency declaration impact federal or Constitutional rights those actions should be

---

[3] See Attachment F
[4] Article VI, Paragraph 2 of the U.S. Constitution

2

      reviewed under strict scrutiny and, if this standard is not met, such a declaration should be void.

7. The <u>Home Building & Loan Assn.</u> decision also includes the statement, "Whether the emergency still exists upon which the continued operation of the law depends is always open to judicial inquiry." If an emergency declaration is successfully challenged and the declaration is determined to no longer be valid then it would follow that the measures taken during the declaration would no longer be valid and thus it would have the effect of the order being voided ab initio.

8. The facts demonstrated by the Plaintiffs in the complaint and evidence thus far submitted demonstrate that COVID-19 poses nearly no risk to a vast majority of the population and that the overall risk is roughly equal to the seasonal flu. Defendants cannot claim to be unaware of this. The rights abridged under this unjustified emergency declaration thus far, have been so absurdly far reaching that Plaintiffs will even be requesting the recognition of rights that have never even been fully vetted in Federal Court to this point.[5]

9. Ultimately, while Plaintiffs will not test the validity of the initial declaration of emergency, we believe the facts do and will continue to show that the continuation of this emergency declaration is, at minimum, arbitrary and capricious, and more likely being done in bad faith. At this point, six months have passed since the original emergency declaration and none of the claims of novelty or unpredictability that existed in March still exist at this point. Given this situation, it is most appropriate to simply vacate the entire declaration.

## Preliminary Injunction Test

10. As noted above, the test for a preliminary injunction balances four factors:
    a. a strong likelihood of success on the merits
    b. the possibility of irreparable injury
    c. the balance of hardships in its favor
    d. the advancement of public interest

---

[5] Plaintiffs will be discussing the right to work elsewhere in this case as was recognized in the recent ruling for <u>County of Butler v. Wolf</u> ,2:20-cv-677, (2020.) Other previously untested rights may also be discussed in the case brief.

11. Plaintiffs also bear the burden of demonstrating their entitlement to a preliminary injunction, and an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002).

12. Even if the court is not certain that a plaintiff is likely to succeed on the merits, a preliminary injunction is still appropriate where the plaintiff shows "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant" or if "the merits present a sufficiently serious question to justify further investigation." In re DeLorean Motor Co., 755 F.2d 1223, 1229-30 (6th Cir. 1985) (quoting Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982)).

13. **Under the first prong of the test**—the likelihood of success on the merits—it is clear that whether under Plaintiffs request for injunctive relief as pertaining to the various specific rights violated or under the request for injunctive relief against the emergency declaration the Plaintiffs are likely to succeed on the merits of the case. We point the Court to language used in the recent ruling in the Western District of Pennsylvania in which the court stated that, "… even in an emergency, the authority of government is not unfettered. The liberties protected by the Constitution are not fair-weather freedoms – in place when times are good but able to be cast aside in times of trouble."[6]

14. It is important to note that in the *Butler* case the Court was only asked to determine the Constitutionality of the actions taken by the State of Pennsylvania – which were very similar to those taken in Ohio. In this case, we also bring before the Court, indisputable evidence that the emergency itself is unjustified and must be vacated. As such, Plaintiffs in this case have indisputably shown a very high likelihood of success during trial on the merits.

15. **The second prong of the test is clear**. Constitutional violations are routinely recognized as triggering irreparable harm unless they are promptly remedied. See, e.g., Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). In this case, more

---

[6] County of Butler v. Wolf, 2:20-cv-677 (2020)

2

violations of the Plaintiffs Constitutional rights have occurred than could be listed. An incomplete and general overview of a number of the rights impaired can be found in the Complaint (integrated here by reference). Some of these violations are ongoing and some are likely to occur again without injunctive relief.

16. **The third prong** is based on the balance of hardships. The balance of hardships has fallen heavily on the Plaintiffs. For a disease that is no more dangerous than a yearly influenza outbreak, Plaintiffs have been placed under statewide house arrest, lost substantial amounts of income, seen damage to businesses, been unable to exercise their right to assemble, had their ability to practice their individual religious beliefs inhibited, unable to exercise their right to earn a living, been discriminated against on the basis of age (in nursing homes), been discriminated against on the basis of health conditions, and even had their right to breath freely limited. The most appalling part of this statement is that it is only a partial list of the Plaintiffs rights that have been violated.

17. The State is suffering no hardship for its actions beyond the massive revenue losses it is experiencing due to the diminished tax base resulting from their own illegal actions.

18. **The fourth and final test** is whether the injunction would be in the public interest. Per the Sixth Circuit, "the public interest is promoted by the robust enforcement of constitutional rights." Am. Freedom Def. Initiative v. Suburban 15 Mobility for Reg. Transp., 698 F.3d 885, 896 (6th Cir. 2012). At the moment, that is simply not happening.

19. Plaintiffs also submit that, given this disease is roughly as dangerous as the yearly flu and is something that will continue to exist indefinitely, there is really no more risk to the public in granting this order than would otherwise exist in daily life. We cannot regulate risk from life either in practical terms nor Constitutionally. The idea that the State may remove most rights preserved under the Constitution is absurd and only made more so by the fact that the science does not justify it.

20. It is also completely counter to the Constitution – which exists to protect the rights of citizens by limiting the power of government – for the State to act under the proposition that an emergency declaration means that it may limit or remove rights at will and without justification. The Constitution of the United States grants specific and limited powers to the government – all others are preserved for the people. Ninth Amendment of the Constitution of the United States. The use of an emergency declaration to "dodge"

2

    these Constitutional protections is creates uncertainty, instability, and has cause incalculable damage to both individuals and businesses.[7] Each day that passes without the restoration of rights only exacerbates these problems while providing no real benefit. The public interest is clearly served by granting preliminary injunctive relief here.

21. **The Balance** – State defendants have dramatically overplayed their hand. They did not and do not possess the Constitutional authority to do what they have done. Further, they did so while misleading the public, elected officials, and even the courts about the danger posed by this disease. There is little to no increased risk to the public posed by granting the preliminary injunction – particularly in light of the fact that it is well known that this disease is something we must continue to live with, but an incredible level of risk posed if it is not granted. It is unlikely that there has ever been or ever will be a more clearly justified use of a preliminary injunction than in this case.

Given the preceding, we humbly ask the Court to grant our motions for preliminary injunctive relief on all grounds discussed above.

Respectfully submitted,

    /s Thomas Renz

ATTORNEY
Thomas Renz
Bar ID: 98645
1907 W State St. #162
Fremont, OH 43420
Phone: 419-351-4248

---

[7] Attachment F

2