```
1                        UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF OHIO
2                              WESTERN DIVISION

3

4    MICHAEL RENZ, et al.,              Case No. 3:20-cv-1948
                                        Toledo, Ohio
5             Plaintiffs,

6        vs.                            WEDNESDAY, OCTOBER 7, 2020

7

     STATE OF OHIO, et al.,
8
              Defendants.
9

10              TRANSCRIPT OF PHONE STATUS PROCEEDINGS
              BEFORE THE HONORABLE JAMES G. CARR
11             UNITED STATES SENIOR DISTRICT JUDGE

12

     APPEARANCES:
13
     For Plaintiffs:          THOMAS B. RENZ, Esquire
14                            ROBERT J. GARGASZ, Esquire

15
     For Defendants:          MARION H. LITTLE, JR., Esquire
16                            DANIEL P. MEAD, Esquire

17
     Also Present:            Ara Mekhjian, Esquire
18                            Ohio Attorney General's Office

19

20
     Official Court Reporter:  Stacey L. Kiprotich, RMR, CRR
21                             United States District Court
                               1716 Spielbusch Avenue, Suite 120
22                             Toledo, Ohio 43604
                               (419) 213-5520
23

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

1                     **Wednesday, October 7, 2020**

2                           - - -

3              (Proceedings commenced at 12:04 p.m.)

4                           - - -

12:04:24  5           JUDICIAL ASSISTANT:  Counsel, I now have Judge

6  Carr on the line.

7      Please identify yourselves and your clients for Judge

8  Carr, beginning with the plaintiff.

9          MR. RENZ:  Attorney Renz, and the clients are

12:05:07 10  Renz, et al.

11          MR. GARGASZ:  Attorney Bob Gargasz.

12          MR. LITTLE:  May it please the Court, Marion

13  Little and Dan Mead for the State of Ohio.

14          THE COURT:  Okay.

12:05:24 15          MR. MEKHJIAN:  Also present is Ara Mekhjian

16  from the Ohio Attorney General's Office, but I'm just

17  listening today.

18          THE COURT:  Okay.  That's quite all right.

19      I'm reviewing the papers that came in a couple days

12:05:36 20  ago and giving some thought to all of this, and also

21  reviewing some of the cases that the State cited, you know.

22  It seems to me that it's a different path than I had in mind

23  when we last talked, when the case first came in and I read

24  the complaint and gotten into some of the affidavits, part

12:05:59 25  of the affidavits, which is all I had seen at the time, and

1    not realizing that there's been a fair amount of litigation

2    here in our circuit and elsewhere on roughly the same issue;

3    it's not totally congruent with this complaint and this set

4    of allegations.

12:06:20  5    And it seems to me that the case belongs in

6    Cincinnati, okay.  I mean, whatever I say and do, somebody

7    is going to be unhappy about it.  Maybe everybody will be.

8    But that's -- you know, on a good day in my job, maybe half

9    of the people think I've screwed up totally, and sometimes

12:06:41  10   everybody appeals, which is fine with me.

11    But, you know, this case obviously needs adjudication

12    at a high level, and I think that we all collectively ought

13    to be moving to accomplish that result.

14    So it seems to me that, especially in light of the

12:07:02  15   content of the State's response to the demands made by the

16    plaintiffs for production of various documents on a very

17    prompt and expedited basis, we should simply forego that.

18    The circuit said in the *Governor Whitmer* case, you

19    know, at least on a rational basis standard, and I

12:07:20  20   realize --

21                    (Court Reporter clarification)

22                    THE COURT:  At least on a rational basis -- in

23    the *Governor Whitmer* case, I think it's W-h-i-t-m-e-r, I'm

24    not sure, at least where review in this situation is on a

12:07:41  25   rational basis standard, no factual record is necessary.

4

1    And I realize that there's First Amendment contentions and

2    issues at play here.  It's also my understanding that other

3    circuits, other courts, have looked at those, and I have not

4    looked at those cases.  I have a law clerk who has simply

12:08:02 5    reported to me that there are decisions on these general

6    issues, I guess, in the Eleventh, the Eighth and Seventh

7    Circuit, and maybe some district court cases.

8         Anyway, to cut to the chase, I think what we should do

9    is forego discovery, if the State is so inclined, and

12:08:24 10   perhaps we convert it's present pleading, which reads more

11   like a motion to dismiss rather than, you know, relative to

12   any dispute of discovery.

13        And, Mr. Little, would you agree with me on that?  I

14   mean, you cited the *Jacobson* case and I think a couple other

12:08:42 15   cases, the Sixth Circuit case I believe you cited, and then

16   also Judge Sargus' case on the Bucyrus Bratwurst Festival,

17   and, like I say, the tenor was, you know, telling me that

18   the case should be dismissed.

19        I mean, did I misinterpret the tenor and tone?  Or

12:09:07 20   would you agree with me?

21             MR. LITTLE:  Well, we were trying to outline,

22   for the Court's benefit, why any discovery would really be

23   limited from the State, if any were permitted, Your Honor.

24             THE COURT:  Yeah.

12:09:19 25             MR. LITTLE:  I think we were inclined to file

1  a motion to dismiss principally because the amended

2  complaint really doesn't state a claim at all.  So our

3  current thought process was that, when we responded in the

4  time frame prescribed by the Court, we would offer a motion

12:09:37  5  to dismiss that hopefully the Court --

6                  THE COURT:  Well, as I say, I would like to

7  move expeditiously if you can.  I think that's what the

8  plaintiffs want; am I correct?  I mean, I certainly recall

9  that, from our early discussion, you want me to get to these

12:09:53  10  issues as quickly as I possibly can; am I correct about

11  that?

12                  MR. RENZ:  Your Honor, we do, but we

13  absolutely disagree with the position of the State.  It's

14  the position --

12:10:05  15                  THE COURT:  No.  I understand that.  I mean,

16  what I am suggesting, and, as I say, as expeditiously as

17  everybody can manage, but, also, you know, to cover the

18  issues to the extent necessary, obviously, and to instruct

19  me because that's your job, as lawyers, to teach me.

12:10:31  20      So my thought was, quite candidly, to permit the

21  State, if it were so inclined, to file a motion to dismiss,

22  or in the alternative to deny the preliminary injunction;

23  and then obviously for you to respond, both to do so in

24  whatever timetable you want to set.

12:10:57  25                  I think at that point, the issues would be joined and

| | |
|---|---|
| 1 | I would turn to it promptly.  I would simply let you folks |
| 2 | cut ahead of everybody else in line.  Right now I've got |
| 3 | maybe about eight to ten motions that are decisional, but |
| 4 | they are all fairly recently decisional.  I think most of |
| 12:11:14 5 | them have only been decisional since sometime perhaps in |
| 6 | August, so it is not as though -- I may have some older than |
| 7 | that, but it would be no inconvenience to me or the other |
| 8 | party -- other people awaiting a decision if I were to give |
| 9 | this case priority.  I think it deserves it.  It's a very |
| 12:11:34 10 | important case, and I think we're all aware of that. |
| 11 | So that being said, let me ask plaintiffs' counsel how |
| 12 | that sounds to you. |
| 13 | MR. GARGASZ:  Your Honor, this is Attorney Bob |
| 14 | Gargasz on behalf of the plaintiffs. |
| 12:11:48 15 | Earlier on, I believe I heard you say, and I want to |
| 16 | be clear, you see this as a case where we could forego |
| 17 | discovery because there is no factual basis as necessary |
| 18 | to -- |
| 19 | THE COURT:  No -- |
| 12:12:07 20 | MR. GARGASZ:  I guess I was a bit confused on |
| 21 | that. |
| 22 | THE COURT:  Yeah.  No.  The Sixth Circuit |
| 23 | stated, I think, in Judge Gibbons' opinions that the |
| 24 | rational basis test can be applied without the need for a |
| 12:12:20 25 | factual record.  And that basically, you know, I think it |

1    would be appropriate, however, for the State, if it wanted

2    to -- it would be up to it -- to append to its motion.

3    Simply, I've got your affidavits, and I've got to permit the

4    State, if it so desires, to append any statements that

12:12:52  5    either the governor or the former health director had made.

6    I think they would be admissible under Rule 803(8), you

7    know, the public documents or statements exception to the

8    hearsay rule, the first segment of that rule.  And crudely

9    translated -- I can't cite it, but basically, you know,

12:13:15  10    statement made of an official relative to the duties of his

11    or her office, that that statement -- I don't know.  I have

12    no idea.  I don't Google it or whatever when a case is

13    before me.  But I assume both the governor and the health

14    director made public statements setting forth why they were

12:13:37  15    doing whatever it was that they were doing and have done

16    that you are challenging.  And --

17                    MR. RENZ:  Your Honor.

18                    THE COURT:  Yeah -- and let me just finish.

19        It is up to you guys.  We can take as much time or

12:13:54  20    little as you want.  But as I say, you know, whatever

21    decision I write, at whatever length I write it, and however

22    solid it may or may not be, it's going to Cincinnati.  It

23    will be, at best, the third brief in the Court of Appeals,

24    and that's commonplace in cases that clearly are destined

12:14:18  25    for review in a higher court.

1    And in all candor, to the extent, in particular, if

2    the plaintiffs -- I think they are pressing a sense of

3    urgency, that this is something that needs to get

4    adjudicated in the matter of great public interest, and I'm

12:14:37 5    sure that the State would like as much clarification as it

6    can.  And whatever I say or do, in the long run is going to

7    be meaningless in the sense that it won't matter because it

8    will be a district court, and there will be a higher court

9    or courts that will address these issues, either the Sixth

12:14:59 10    Circuit or perhaps the Supreme Court.

11    And then to the extent that either or both sets of

12    parties would like to, you know, avoid delay and, you know,

13    learn what the law is in the current state of the law, it

14    just doesn't make sense to me to spend a whole lot of time

12:15:23 15    or any time conducting discovery, because, you know, the

16    requests that the plaintiffs have made are not something

17    that you folks can turn around in a week or whatever, or

18    even a month or two perhaps.  And at least, as I read the

19    *Whitmer* case, the Sixth Circuit has expressed a view that,

12:15:51 20    you know, a factual record need not accompany the State's

21    argument that it had a rational basis for a gubernatorial

22    action.

23    And, again, I tried to express last time when we were

24    together, the State wants a prompt preliminary injunction

12:16:14 25    hearing, but they also want discovery, so it's (inaudible)

1    in two different directions.

2         And, again, to the extent that either or both parties

3    think that, you know, a final determination by the Sixth

4    Circuit or the Supreme Court is necessary or desirable, and

12:16:36  5    I'm sure you both do, then why spend unnecessary time before

6    me and then go up on appeal?

7              MR. GARGASZ:  Your Honor, this is Attorney

8    Gargasz again for the plaintiffs.

9              THE COURT:  Yeah.

12:16:52 10              MR. GARGASZ:  And I just wanted to bring up

11    the fact that I believe Attorney Marion Little had agreed in

12    our conference that we could stipulate to various

13    information that was presented in the complaint.

14         Marion, do we still have that agreement with respect

12:17:08 15    to those stipulations on, like, the CDC findings and the

16    statements and so forth attributed to the defendants?

17              MR. LITTLE:  I think, Your Honor, we're

18    certainly not going to object as to the authenticity of

19    formal publications from the CDC or the State of Ohio.

12:17:32 20         And to address the Court's one comment, the plaintiffs

21    have referenced many of the Health Orders in its complaint.

22              THE COURT:  Right.

23              MR. LITTLE:  And so the Court might be able to

24    take notice of those orders as --

12:17:42 25              THE COURT:  Yeah.

1          MR. LITTLE:  -- a resolution of the motion to

2     dismiss that we would be pleased to file with the Court.

3          THE COURT:  Yeah.  So, I mean, basically I'm

4     asking the plaintiffs, what do you want?  Do you want to

12:17:57  5     spend a lot of time with me?  Or do you want all of us to

6     focus on getting the case out of my court and down to

7     Cincinnati?

8          MR. RENZ:  Well, Your Honor, this is Attorney

9     Renz.

12:18:12  10       One of the things that -- you know, from our position,

11    we've included a lot of facts and a lot of things that would

12    normally not be given prior to the discovery conference in

13    our case, which you noted was fairly an unorthodox filing.

14       We did that in part, citing CDC and State comments,

12:18:32  15    for particularly the reason that we believe that discovery

16    is a critical aspect of this case and should be granted as

17    quickly as possible.

18       Ultimately, our position is that the State made the

19    decision to lock down an entire state, to destroy peoples'

12:18:49  20    businesses, to destroy peoples' livelihoods.  And all we're

21    asking for is some data to back that up, because had they

22    not offered -- if the data doesn't support it, then it's

23    arbitrary and capricious.

24       Now, I understand the Sixth Circuit ruling.  But what

12:19:03  25    we have presented also shows that the State's words and the

1    State's actions are not congruent, they don't mesh, and so

2    we view this as arbitrary and capricious.

3              THE COURT:  We're looking, you know,

4    basically -- and, well, perhaps I should ask Mr. Little.  I

12:19:30  5    mean, is your view on discovery, if any, relative to either

6    filing a motion -- to file a motion to dismiss, or in the

7    alternative to deny the request for preliminary injunction?

8    What's your thought on that route?

9              MR. LITTLE:  Your Honor, the motion to

12:19:47  10   dismiss, of course, by rule, does not require any discovery.

11             THE COURT:  Right.

12             MR. LITTLE:  And we have a very good motion to

13   dismiss that we can supply to the Court.

14             THE COURT:  Yeah.

12:19:58  15             MR. LITTLE:  With respect to the balance, what

16   the Sixth Circuit in the *Whitmer* case said, and I know the

17   Court hasn't had an opportunity to review that decision, but

18   that case, in part, was an effort by the district court to

19   say that the State didn't prove certain points and the State

12:20:15  20   didn't offer certain evidence.

21             THE COURT:  Right.

22             MR. LITTLE:  And what the Sixth Circuit made

23   clear is that the State doesn't have to do any of those

24   things when, under a rational basis test, it could be simply

12:20:25  25   speculation.  To have that issue resolved I think would be

1     fairly easy.

2          We certainly did not cite for the Court, but there is

3     probably 40 or 50 COVID decisions out there by the federal

4     courts denying efforts by plaintiffs to secure injunctive

12:20:43  5     relief enjoining a State's enforcement of the COVID

6     restrictions.  So if nothing else, the sheer number of cases

7     out there supporting this type of action by the State would

8     further support the State of Ohio's action and --

9                    MR. RENZ:  We disagree with that.

12:21:05 10                    THE COURT:  Go ahead.  Timeout.  Wait a

11     minute.  Let me say to both of you:  Having reviewed and

12     read only *Jacobson, Whitmer* and the *Bratwurst* case, because

13     that's all that's came to my attention for a couple of days,

14     if memory serves, and I've had some pretty busy days in

12:21:37 15     between with the conferences and Zoom court proceedings, and

16     I think I was able to turn to this I think yesterday or the

17     day before.  I think it was yesterday.  I spent as much time

18     as I can in the interim.  And, you know, I had a law clerk

19     this morning and told me that, you know, there are a number

12:21:54 20     of cases, and I realize there are upwards of 40.

21          But I do think, Mr. Renz, that in light of the rather

22     quite clear and I think unequivocal statements regarding --

23     in both the *Whitmer* case, and, of course, in the face of a

24     motion to dismiss, discovery is not -- you just don't allow

12:22:19 25     discovery because you look at the four corners of the

1      complaint and that's it, and that's a rule that I, you know,

2      follow unvaryingly, and --

3                  MR. RENZ:  We don't disagree.

4                  THE COURT:  Excuse me.  The simple fact of the

12:22:31  5    matter is I misapprehended.  Okay?  I had no idea that there

6      was other COVID-related litigation or decisions, you know,

7      until I read the State's response to your request to it.

8      And I had noted, of course, that you basically said in your

9      complaint that, you know, although *Jacobson* may appear to be

12:23:12 10   pertinent or to relate, you know, control in this case, in

11     your view it does not, but that's a legal issue.  I mean,

12     that's what has been raised in various forms.

13          And I had no idea of the multiplicity of forms in

14     which it has been raised.  I haven't read those cases.  And,

12:23:38 15   you know, *Jacobson* obviously involved a local health

16     department, the Cambridge Health Department, and, of course,

17     it involved a situation where, at least in the modern

18     perception, under the case of *Schmerber versus California,* a

19     case of involuntary withdrawal of a blood sample from about

12:24:00 20   40 or 50 years ago, it involved actual intrusion into one's

21     body, subject to the pain and penalty, at the rate of a

22     hundred years ago, a $5 penalty.  That was a criminal case;

23     it wasn't a civil case.

24          And so, again, I think that, again, Mr. Renz and Mr.

12:24:25 25   Gargasz, I had the distinct impression that you wanted this

14

1   case to move very promptly.

2              MR. RENZ:  We do, Your Honor.

3              THE COURT:  And I think my point to you is,

4   well, what's the point of, you know, spending a lot of time

12:24:43  5   here with me, when what I say in the end run doesn't matter

6   because it will be superseded, undoubtedly, by whatever the

7   Sixth Circuit says?  And so the shelf life of whatever I say

8   in terms of its significance to anybody or anything will be

9   whatever it takes for the Sixth Circuit to, you know, do

12:25:13  10   what it will do with the result that I reach and my

11   rational.  And so I'm telling both of you --

12              MR. RENZ:  And so --

13              THE COURT:  Go ahead, Mr. Renz.  I apologize.

14              MR. RENZ:  No, no.  I apologize, Your Honor.

12:25:28  15   I'm just very intent in terms of this case, so I do

16   apologize.

17              THE COURT:  Sure.

18              MR. RENZ:  So we do want this to move quickly.

19   One of the things that we've really distinguished in our

12:25:43  20   case -- and I'm actually going to go somewhere with this --

21   is we included a massive amount of facts related to our case

22   which we would and have every intent of meeting our

23   evidentiary standards on by the time we got to either a

24   hearing or a trial.  Yeah, obviously, in the initial

12:26:02  25   submission, you know, we haven't finalized all of those in

1    terms of the necessary evidentiary standards, but we

2    certainly will by the time trial rolls along, or by the time

3    a preliminary injunctive hearing rolls along, as far as that

4    goes.

12:26:20  5    And one of the things I would submit to the Court very

6    humbly is, yes, there are a lot of COVID cases.  The one

7    that really distinguishes our case is that we've used CDC

8    data, we've used Ohio Health Department data, we've used

9    their statements to show that -- to rebut the rational basis

12:26:38  10    issue.

11    Now, we knew going into this that this would probably

12    be challenged on a rational basis question, and so it was

13    our duty then to say to the Court, Your Honor, we

14    understand, but we have shown, using their words and their

12:26:57  15    data, that there is something that doesn't smell right here.

16    And we've shown essentially that for a disease that's

17    roughly equivalent to the yearly influenza, we've shut down

18    and taken all these actions.  And the question that we were

19    asking the Court really has always been is it constitutional

12:27:13  20    to limit all of these rights in the way that they have under

21    this emergency order.

22    And if you recall, we cited the *Blaisdell* case, which

23    was a case that came out in the '30s in the Great Depression

24    where they challenged an emergency declaration.  And the

12:27:29  25    Court in *Blaisdell* clearly stated that they had the right to

1    question the extent and duration of the emergency.

2         Now, we certainly asked a lot of other questions in

3    this case, but one of the core questions and probably the

4    most relevant was the question:  Can this emergency

12:27:46  5    continue?  Our position is that it should not continue.

6    We've shown, using CDC's data and word, that we've rebutted

7    the presumption necessary, we believe, that there is a

8    rational basis for this, and shown, based on the State's

9    facts, many of which, as Mr. Little stated, are coming from

12:28:10  10   CDC tax documents, things like that, they've shown that this

11   is roughly equivalent to the yearly flu.

12        So with that in mind, underlying this entire case is

13   the question:  Is the data that the State is presenting --

14   because what the State is saying on TV and what the State

12:28:31  15   and the CDC are presenting in terms of their actual data are

16   two totally different things.

17        And our position is if you look at what they've

18   written, not what they've said, and dig into those deep

19   enough, you're seeing an emergency injunction and lot of

12:28:45  20   fear tactics that are being used to justify something that

21   is unjustified under the law, even under a rational basis

22   review, which we don't believe is the correct standard.  But

23   even under that rational basis review, we do not believe the

24   State can get there.  We --

12:28:58  25             THE COURT:  Well --

1            MR. RENZ:  -- do not believe that they can.

2      Yeah, we know that we have the duty, but we think that our

3      facts in there -- and if you look at the citations and

4      everything else, you'll see, but we think that we've gotten

12:29:11  5      to a point where discovery is justified and we are

6      interested in moving along.

7            And if we need to appeal the question of when

8      discovery should begin, I mean, certainly we can do that,

9      and we leave that to Your Honor.  But, ultimately, we

12:29:27  10      believe that we have rebutted successfully the State's

11      position in the complaint.

12            THE COURT:  But let me say this:  At the

13      anticipatory of whatever the State might say, and the State

14      is entitled -- the cases are legion -- that in its making a

12:29:53  15      response to a motion for preliminary injunction, is entitled

16      concurrently to move to dismiss.

17            And, you know, I have the sense, from what Mr. Little

18      said a few minutes ago, that it believes as vigorously as

19      you do that he's correct and you are wrong.  You believe the

12:30:14  20      other way around.  But none of us have seen the State's -- a

21      more formal presentation.  I mean, the State, you know,

22      took, as it were, a glancing blow toward the complaint, but

23      it was simply in a document filed in anticipation of this

24      session, which you all anticipated would be a

12:30:41  25      discovery-related session because that's how I framed it

1    when focusing on the request for a preliminary injunction.

2         And having read things that I had not read beforehand,

3    before the other conference, I think it's appropriate to

4    give the State the opportunity, if it chooses, to file a

12:31:09  5    motion to dismiss, or in the alternative to deny a

6    preliminary injunction, or whatever else it wants to file.

7    I don't necessarily want to, you know, forecast what exactly

8    the frame in which it will cast its arguments, but that's up

9    to it.

12:31:30 10         And, again, each of you can take as much time as you

11    want or as little as you want with regard to that motion

12    practice.  But at this stage, you know, particularly if they

13    file a motion to dismiss, there is no right to discovery,

14    there is no right to discovery under the civil rules and

12:31:55 15    case law.  And, certainly, I don't belive I have ever

16    allowed discovery when a motion to dismiss is pending, and,

17    Lord knows, I've had plenty of motions to dismiss in

18    41 years as an Administrative Judge and District Judge.  I'm

19    dealing with -- I've got one right now that one of my clerks

12:32:20 20    was doing some editing and working on, literally as we talk,

21    except she's sitting in on this now.

22         So that being said, Mr. Little, in terms of -- what do

23    you want to do and when do you want to do it?

24              MR. LITTLE:  Your Honor, we will be proceeding

12:32:44 25    with the filing of a motion to dismiss.  Our response was

1    due the last week of October, I think the 30th; but perhaps

2    given the Court's comments, we can advance that to the 23rd?

3              THE COURT:  Okay.  Whatever you want.  It's

4    your call.  It's entirely up to you and --

12:32:59  5              MR. LITTLE:  Okay.

6              THE COURT:  Go ahead.

7              MR. LITTLE:  Well, then perhaps what we'll do

8    is just follow the original schedule the Court put in its

9    minute entry of September 9th, which is identified as --

12:33:19 10              THE COURT:  I don't recall.  Which was?

11              MR. LITTLE:  We were to file our answer within

12    30 days of the plaintiffs' submission of its amended

13    complaint.

14              THE COURT:  Okay.  That's fine.

12:33:34 15              MR. LITTLE:  We'll just follow that.  That

16    puts us towards the end of October.

17              THE COURT:  That's fine.  Whatever you want.

18    If you want file it sooner -- and then, Mr. Renz, how much

19    time do you want for your opposition to their motion?

12:33:55 20              MR. RENZ:  I would ask for a minimum of two

21    weeks.  I would say two weeks would probably be sufficient.

22              THE COURT:  Of course.  Well, I mean, it is up

23    to you.  I would suggest to you, sir, I think that the rules

24    give you more time than that.

12:34:15 25              MR. RENZ:  Let's go with the rules, and we can

1   always submit it early if we need to.

2               THE COURT:  Okay.  And I believe -- I mean, I

3   normally allow a month.  It's been a long time since I

4   looked at the rule.  I think the rule is 20 days.  Does

12:34:31 5   somebody know better than I?

6               MR. RENZ:  I thought it was 30, but it's been

7   a while since I've looked at it, the same thing.

8               THE COURT:  Yeah, me too.  Whatever it is, I

9   will stick it in.  Okay?

12:34:41 10              MR. RENZ:  Thank you, Your Honor.

11              THE COURT:  And then, Mr. Little --

12              MR. GARGASZ:  Judge.

13              THE COURT:  Pardon me?

14              MR. GARGASZ:  Judge, this is Attorney Gargasz.

12:34:47 15      I recall under the previous order, I believe it was

16   November 13th was our deadline to respond and reply.

17              THE COURT:  I mean, if that's okay with you, I

18   mean, that's -- whatever, and then I will --

19              MR. RENZ:  We would rather have the --

12:34:59 20              THE COURT:  Okay.

21              THE RENZ:  We'll take whatever time we can

22   get, Your Honor, and we can do it faster if we need to.

23              THE COURT:  Okay.  Good.  So if one of my

24   clerks can do a quick check, smarten up the chump -- namely,

12:35:17 25   me -- in terms of when it comes to knowing those deadlines.

1    I'm serious, I get people a month after discovery for

2    summary judgement, between a month for opposition and two

3    weeks for the reply.

4         So let's find out the time and then we can fill that

12:35:29  5    blank in.

6                   MR. LITTLE:  Your Honor, under your published

7    preferences, it's 30 days on motions.

8                   THE COURT:  I mean, whatever you want.  You

9    want the full 30 days, that's perfectly all right with me.

12:35:43 10                   MR. RENZ:  Yes, Your Honor.

11                   THE COURT:  Okeydoke.

12         So the order will be:  Defendants to file -- to answer

13    or otherwise to file a motion to dismiss, or in the

14    alternative, if you want, Mr. Little, obviously whatever you

12:35:59 15    file -- the defendants to file a motion to dismiss, or

16    otherwise plead on or before -- and what was that date, Mr.

17    Little, you wanted?  Again, tell me again.

18                   MR. LITTLE:  Bear with me a second,

19    Your Honor.  I think I have it docketed here.

12:36:16 20                   THE COURT:  If you want more time, if you want

21    a month, that's fine with me.

22                   JUDICIAL ASSISTANT:  It was October 30th.

23                   THE COURT:  Well that's a little short.  Mr.

24    Little, why don't we say in 30 days.  If you file it sooner,

12:36:29 25    that's fine.  Okay?

1          MR. LITTLE:  Thank you, Your Honor.

2          THE COURT:  You've got a lot -- the amended

3    complaint and so forth, the motion, are pretty bulky.

4        And then the plaintiffs will have -- shall file their

12:36:46  5    opposition within 30 days of the date of the filing of the

6    defendants' motion; and then the defendants shall have

7    15 days within which to file their reply.

8        Does that work for you, Mr. Little?

9          MR. LITTLE:  It does, Your Honor.  Thank you.

12:37:08 10          THE COURT:  Okay.  And so in terms of the

11    discovery requests, I'm simply going to hold further

12    proceedings, including discovery, held in abeyance pending

13    adjudication of the motion to dismiss.  Okay.

14        I will note your objection, Mr. Gargasz and Mr. Renz,

12:37:28 15    but, you know, that is the rule.

16        And I will simply note in passing that the current

17    format for the request really, when and if the time comes

18    for that, be cast, you know, as either request for

19    admissions, interrogatories, or, you know, notice of

12:38:00 20    deposition and request for production of documents and so

21    forth, but we'll worry about that when and if the time

22    comes.

23        I would suggest to you, Mr. Little, that you -- I

24    mean, it does seem to me that if I were to overrule the

12:38:17 25    motion to dismiss, that I would suggest to you that you

1    might want to request -- I think it is 1262(b) or whatever,

2    the request for interlocutory review, given the nature and

3    importance of the case.  I really do think that the issues

4    raised in this case need to get appellate review as promptly

12:38:45  5    as possible.

6         And I can assure you that once this becomes

7    decisional, it's going to take me a while to get something

8    out, but I will try to get something out in a couple of

9    weeks, or certainly within a month at the latest after it's

12:39:03 10    decisional.

11              MR. RENZ:  Your Honor, this is Attorney Renz.

12         If you don't mind me asking, do you have a preference,

13    I mean, for putting this before the Appellate Court?

14              THE COURT:  I mean, no.  I'm just saying my

12:39:17 15    point is, as I put it before, what I do and say isn't going

16    to matter.  But, you know, I'm a weigh station on the way to

17    an end station.  Okay?  I'm not a whistle stop, but it's,

18    you know, a necessary stop, as it were, the train has to

19    make.  Okay?  I've got to load my baggage onto it to get

12:39:43 20    unpacked down in Cincinnati, and perhaps in Washington.

21    Okay?

22              MR. RENZ:  Yes, sir, Your Honor.

23              THE COURT:  Although other cases, these issues

24    may get resolved at some point in the meantime, next year or

12:39:56 25    the year thereafter while this one is still, you know,

1  winding its way.  But that's all I'm saying, you know.  I

2  obviously can't simply say I hereby transfer this case or

3  reassignment to a panel of three judges in Cincinnati.  I've

4  got to do my own work and I will.  Okay.  It's important.  I

12:40:17  5  mean, the parties deserve, and the circuit is going to

6  expect, that I present a crafted and reasoned decision, even

7  though either or both of you are not going to be happy with

8  me.  But that's something every judge has to learn to live

9  with; it is not a popularity contest, and, like I say, half

12:40:40  10  of the people you deal with on a good day are mad at you and

11  appeal, so anyway.  Okay.

12       Let me ask plaintiffs, anything further at all?

13            MR. RENZ:  I think we understand, and we are

14  going to proceed as you ordered, Your Honor.

12:41:01  15            THE COURT:  Okay.  Good.  The only thing I

16  would ask is it is not my custom to impose page limits, but

17  I would ask, please, try to keep it within 20 to 30 pages,

18  if you could.  I mean, if you can't, you can't, okay, but if

19  you would be able to, just in terms of my ability to do my

12:41:25  20  work.  I may have mentioned, I make no secret of it, I have

21  a vision impairment that is causing me to lose and has

22  caused me to lose -- it's been happening for about 20 years.

23  It's finally reached sort of its end stage where I'm losing

24  my vision.  I can still read, but it is much more efficient

12:41:54  25  and effective for me to, as I was doing this morning, to

1    simply download materials to an application that enables me

2    to read by audio on my iPhone or iPad.  And so I would only

3    ask that -- and I can do that more quickly than I can read

4    or anybody can read actually, about a page a minute, with

12:42:22   5    good comprehension.  But understanding that, please be

6    mindful that, you know, write what you need to write at

7    whatever length you need to, but keep in mind that I prefer

8    that it's what you need to do rather than more elaborate,

9    you know, more elaborate length and extent.  Okay?

12:42:47  10         Okay.  Once again, anything further for the

11   plaintiffs?

12              MR. RENZ:  No.  Thank you, Your Honor.

13              THE COURT:  Mr. Little and company, anything

14   further for the defendants?

12:42:56  15              MR. LITTLE:  No.  Thank you, Your Honor.

16              THE COURT:  Okay.  And, as I say, I don't

17   think it would be inappropriate if you wanted to offer, you

18   know, whatever statements have been made, but, again, I will

19   leave that up to your discretion and perhaps further

12:43:18  20   conversation with plaintiffs' counsel.  It's your case and

21   it's your call as to what to do, and I will also leave it up

22   to the two of you whether to submit any stipulations of any

23   sort or kind.  Again, you guys can work that out one way or

24   the other, and it doesn't matter to me.

12:43:37  25         What does matter to me is the instruction that I'm

```
 1    going to get from reading your briefs in context, of course,
 2    of the complaint and the pending motion.  Okay.  Okeydoke.
 3                  MR. RENZ:  Thank you, Your Honor.
 4                  THE COURT:  Stacey, you want to give them your
 5    phone number in case they want a transcript?
 6                  THE COURT REPORTER:  Yes.  It's
 7    (419) 213-5520.
 8                  THE COURT:  Okay.  Very well.  Thank you,
 9    folks.
10         And I do apologize that I hadn't foreseen -- I sent
11    you off in the wrong direction for a while, the last few
12    weeks, from what I had sort of, you know -- just I simply
13    reflect of the anticipated discovery, and I don't think it's
14    necessary or permissible at this stage.  So to the extent
15    that you've taken your time thinking about focusing on that,
16    I apologize for that.
17         Okay.  Good enough, folks.  Thank you very much.  That
18    will conclude this session.  Thank you.  Bye-bye.
19                  (Proceedings concluded at 12:44 p.m.)
20                            -   -   -
21                   C E R T I F I C A T E
22         I certify that the foregoing is a correct transcript
      of the record of proceedings in the above-entitled matter
23    prepared from my stenotype notes.
24         /s/ Stacey L. Kiprotich          10/11/2020
           STACEY L. KIPROTICH, RMR, CRR            DATE
25
```

Timestamps: 12:43:57 (line 5), 12:44:12 (line 10), 12:44:34 (line 15)