IN THE UNITED STATES DISTRICT
COURT WESTERN DIVISION FOR THE
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| Michael Renz, Eric Calderaro, et. al , <br> Plaintiff <br> Attorneys: <br> Thomas Renz (Bar ID 98645) <br> 1907 W State St. #162 <br> Fremont, OH 43420 <br><br> & <br><br> Robert Gargasz (Bar ID 7136) <br> 1670 Cooper Foster Park Rd. <br> Lorain, OH 44053 <br><br> -vs- <br><br> State of Ohio, Gov. Mike DeWine, Lance Himes, et al. <br> Defendant(s) | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 3:20-cv-1948 <br><br><br><br><br><br><br><br><br><br><br> JUDGE: Carr <br><br><br> MOTION FOR <br> EXPEDITED DISCOVERY |

1. Plaintiffs in Renz, et al. v. State of Ohio, et al. request expedited discovery of factual information relevant to core claims in the case that will support the efficient development of the evidentiary record and support the Court's adjudication of a forthcoming motion for preliminary relief. Plaintiffs intend to seek preliminary relief and also seek guidance from the Court on a prospective date for a preliminary injunction hearing so that Parties can confer on a potential briefing schedule, which may minimize duplication and maximize use of judicial resources.

2. The Amended complaint (integrated in full herein) submitted to the Court references controlling precedence in this case in both <u>Home Building & Loan Assn. v. Blaisdell</u>, 290 U.S. 398 (1934) and <u>Chastleton Corp. v. Sinclair</u>, 264 U.S. 543 (1924). In *Blaisdell* the Supreme Court stated, "Whether the emergency still exists upon which the continued operation of the law depends is always open to judicial inquiry." P. 290 U. S. 442. And in *Sinclair* the Court stated, "A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change." P. 264 U. S. 547. It clear that the facts are relevant and must be considered in a case pertaining to an ongoing emergency declaration and that such a declaration cannot stand if the exigencies underlying the declaration have changed.

3. To this date, the State has made it clear that it does not want discovery but that is simply not something they can stop under *Sinclair* and *Blaisdell*. Plaintiffs are conscious of the time constraints of the Court and so believe that this request is prudent to avoid further haggling.

4. Pursuant to the previous matters previously discussed with the Court, Plaintiffs believe the State will continue to object to discovery based on the erroneous claim that this case is similar to decided <u>League of Independent Fitness, et al. v Gretchen Whitmer, et al.</u>, Case No. 20-1581. The *Whitmer* case is essentially based on a challenge to a single order issued under the emergency declaration whereas this case challenges the declaration itself (amongst other things). Further, in the *Whitmer* case the parties agreed that the appropriate standard of review on that single order was rational basis. We do not believe that was the proper standard under existing law and do not believe that standard is appropriate in this case given *Sinclair* and *Blaisdell*. Also, after reviewing the *Whitmer*

case, we do not believe that the 6th Circuit was made aware of *Sinclair* or *Blaisdell* in deciding that case as it was not noted in the tables of authority.

5. The Federal Rules of Civil Procedure contemplate that discovery may be expedited in appropriate circumstances. Rules 26(a), 30(a), 33(a), 34(b) and 45(c)(1), which govern initial disclosures, depositions, interrogatories, requests for production of documents and subpoenas, respectively, each state that discovery may be served and responses may be required in advance of the standard time periods provided by the Rules, either if the Court should so "direct by order" or if leave of the Court is obtained. Federal courts generally permit expedited discovery to enable the parties to prepare for a preliminary injunction hearing. *Neighbors Organized to Insure a Sound Envt., Inc. v McArtor*, 878 F2d. 174, 177 (6th Cir. 1989); *Gray Drug Stores, Inc. v. Simmons*, 522 F. Supp 961, 963 (N.D. Ohio 1981).

6. Plaintiffs believe an order for expedited discovery would better facilitate the State's cooperation in this matter. Plaintiffs submit that Defendants can readily produce all documents and data listed in the attached Schedule "A" on an expedited basis, and that information such as the "raw" and unaltered data related to deaths, cases, models, testing, as well as Defendants' 26(a) disclosures, can be produced within 7 days.

We respectfully thank the Court for its consideration.

Respectfully submitted,

/s Thomas Renz

ATTORNEY
Thomas Renz
Bar ID: 98645
1907 W State St. #162
Fremont, OH 43420
Phone: 419-351-4248

SCHEDULE "A"

*PROPOSED EXPEDITED PRODUCTION OF*

*DOCUMENTS AND DISCLOSURES FROM DEFENDANTS*

1. **Documents reflecting all policies and procedures developed by Defendants in responding to COVID-19, since December 1, 2019, as well as all data that was considered in developing those policies and procedures, including by not limited to all data from the CDC, as well as all models used and relied upon in the development of the State's response and the identities of all personnel responsible for the development of such policies and procedures.**

2. **If any of the above policies and procedures were not developed by Defendants but supplied from other sources, please identify the source(s) and produce same, and indicate when the policies/procedures/guidelines were provided to any Defendant including the previously acting Public Health Director**

3. **All documents reflecting Defendants' consideration, if any, of the economic, social, and public health impacts of all COVID-19 mitigation measures undertaken, such as stay at home orders, business shutdowns, closures of schools, cancellations of "elective" medical procedures, closures of medical facilities, and social isolation of nursing home patients, as well as disclosure of the identities of all persons involved**

in the development of same.  Such documents shall include predictions of excess deaths expected to be caused by mitigation measures undertaken or considered.

4. Redacted Death Certificates (redacted to protect personal identifiers such as names, SSNs, and addresses) that mention COVID-19 in any way, as well as all policies and procedures for same and the identities of all personnel responsible for same.

5. Defendants' policies and procedures for identifying COVID-19 cases and/or infections, including all criteria for what constitutes a case or infection, and the identities of all persons responsible for same.

6. Defendants' protocols for COVID-19 testing, including but not limited to policies for who should be tested and why and test sensitivity, as well as the disclosure of each type of test kit used and when it was used, all laboratories used for testing, and the type of test used for each reported COVID-19 case and death in the state.

7. All policies and procedures for contact tracing, redacted documents showing all contact tracing performed by the state, as well as all systems and personnel employed in contact tracing.

8. All documents reflecting COVID-19 hospitalizations, redacted to protect HIPPA-protected information, including admission dates, diagnoses, courses of treatment, and outcomes.

9. **Responsible Restart Info and Closure Questions**

    a. Scientific information supporting current policies for:

        i. Masks

        ii. Schools

        iii. Hair Salons

        iv. Dance Studios

        v. Nursing Homes

        vi. Restaurants

        vii. Any other business category with specific policies issued to remain open

        viii. Any business subject to general business opening policies

    b. **Scientific Information Supporting the Closure of Businesses**

        i. How were businesses determined to be essential or non-essential and by whom?

        ii. What new scientific information supported the continued changes for businesses from the non-essential to the essential category

        iii. Which businesses were recategorized?

        iv. Any scientific data or literature supporting the closure of small independent businesses while leaving large businesses open that provided similar products and/or services

10. **The Existing COVID-19 Dashboard**

    a. All documentation related to the creation of the current COVID Dashboard and the county color coded system

    b. Scientific basis for the system

    c. Full explanation for the usefulness of the system in scientific terms

    d. Policies and procedures to ensure the usefulness and accuracy of this system

11. **All documents evidencing communications, including but not limited to, emails, memoranda, related to COVID-19 or related viruses/diseases between the Executive branch of Ohio and the legislative branch and advisors to the executive branch on this issue.**

12. **All communications from health departments around the State of Ohio questioning and/or raising issues with the accuracy of numbers of cases, number of related deaths, continued emergency declaration and/or individual rules issued under the emergency declaration.**