# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL B. RENZ, et al.,** | : | |
| **Plaintiffs,** | : | **Case No. 3:20-cv-1948** |
| **v.** | : | **Judge James G. Carr** |
| **GOVERNOR MIKE DEWINE, et al.,** | : | |
| **Defendants.** | : | |

## DEFENDANTS STATE OF OHIO, GOVERNOR MIKE DEWINE, AMY ACTON AND LANCE HIMES' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Pursuant to Civil Rules 12(b)(1) and 12(b)(6), Defendants State of Ohio, Governor Mike DeWine, Amy Acton and Lance Himes (collectively, the "State Defendants") move the Court for an Order dismissing all claims asserted against them in Plaintiffs' Amended Complaint (Doc. 21).  As set forth in more detail in the attached memorandum, Plaintiffs have failed to adequately plead a claim against the State Defendants that may be heard by this Court.

Respectfully submitted,

DAVE YOST, Ohio Attorney General

/s/  Marion H. Little, Jr.
John W. Zeiger (0010707)
Marion H. Little, Jr.  (0042679)
SPECIAL COUNSEL
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 S. High Street
Columbus, Ohio  43215
Telephone:  (614) 365-9900
Facsimile:  (614) 365-7900
zeiger@litohio.com
little@litohio.com

*Counsel for Defendants State of Ohio, Governor*
*Mike DeWine, Amy Acton, Former Director of the*

*Ohio Department of Health, and Lance D. Himes,*
*Interim Director of the Ohio Department of Health*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.**                    <u>**INTRODUCTION**</u>

> *"[I]f one disagrees with the policy choices made, recourse*
> *is not to the courts, which can do nothing about policy choices.*
> *Recourse, if any, is to the ballot box."*

[<u>Utahns for Better Transp. v. U.S. Dep't of
Transp.</u>, 180 F. Supp. 2d 1286, 1293 (D. Utah
2001) (emphasis added).]

Plaintiffs are in the wrong forum.  Their attacks are simply partisan, personal opposition
to the steps the State of Ohio has taken to protect its citizens from the onslaught of the COVID-
19 pandemic.  But "[w]hen we strip away the rhetoric here, what's left is a quarrel over the [State
of Ohio's] exercise of discretion" and power to protect the public's health.  <u>Hafoka v. Sessions</u>,
734 Fed. Appx. 565, 570 (10th Cir. 2018).[1]

The courtroom is not the proper forum to debate social and health policy pronouncements
by public officials, particularly on matters of public safety and health.  Simply put, Plaintiffs'
personal opinions about Ohio's response to the COVID-19 pandemic are irrelevant.  Indeed, the
United States Supreme Court has long held that States have broad powers to protect their citizens
in the face of public health emergencies.  <u>See</u> <u>Jacobson v. Massachusetts</u>, 197 U.S. 11 (1905).
<u>Jacobson</u> teaches us that judicial review of state measures responding to a health crisis is very
limited, and courts must not intervene except when a measure "has no real or substantial relation
to" the object of protecting "the public health, the public morals, or the public safety," or is
"beyond all question, a plain, palpable invasion of rights secured by the fundamental law."  <u>Id.</u> at

---

[1]          <u>See also</u> <u>Monumental Task Comm., Inc. v. Foxx</u>, 157 F. Supp. 3d 573, 603 (E.D. La. 2016) ("Plaintiffs
have established only that they disagree with the City's action, not that the City abused its power. This Court,
however, has nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not
satisfying to a majority of the citizens, their recourse is to the ballot—not the courts."*)* (emphasis added).

31.  Courts across the country have followed <u>Jacobson</u> and afforded deference to state measures aimed at combatting the spread of COVID-19.

Here, Plaintiffs' amended complaint is an eighty-one page exercise in the exact type of second-guessing that <u>Jacobson</u> and its progeny forbid.  Despite its length, the amended complaint contains virtually no factual allegations about the Plaintiffs' themselves and is instead devoted to offering competing views about what information about COVID-19 ought to be dismissed and what information ought to be treated as gospel, with the ultimate conclusion being—in their mind—that Ohio should have taken different actions in response to the COVID-19 pandemic.

At bottom, Plaintiffs' amended complaint fails in numerous respects:

- Plaintiffs' claims against the State of Ohio are barred by the doctrine of sovereign immunity.

- So, too, are Plaintiffs' claims for monetary relief against the state officials sued by Plaintiffs—Defendants DeWine, Acton and Himes.

- As for Defendant Acton (former Director of Ohio Department of Health, "ODH"), Plaintiffs do not assert a claim for prospective relief so she must be dismissed from this case for that additional reason.

- Plaintiffs also assert claims under Ohio law (both statutory and constitutional), but these claims are beyond this Court's subject matter jurisdiction.

- When one reviews the affidavits from Plaintiffs attached to Plaintiffs' amended complaint, one quickly realizes why Plaintiffs omitted any factual allegations about Plaintiffs from the complaint itself: Plaintiffs' claims are fundamentally about actions taken by non-parties (for example, retail stores that do not honor the medical

4

exemption to the state mask mandate) that do not give rise to a claim against Defendants.

• When all of the claims described above are stripped away, Plaintiffs are left with barebones allegations that do not plausibly state a claim upon which relief can be granted.  But even if Plaintiffs had adequately alleged a constitutional challenge, such a claim would fail under the deferential <u>Jacobson</u> standard.

As discussed in more detail below, Plaintiffs amended complaint should be dismissed.

## II.                                          <u>BACKGROUND</u>

Plaintiffs are eight individual residents of Ohio who have sued the State of Ohio, Governor DeWine, the former and interim Directors of ODH—Dr. Amy Acton and Lance Himes, respectively—and "Department of Health for Ottawa County" (presumably Plaintiffs intend to sue Ottawa County Department of Public Health).  [Am. Cmpl. at unnumbered paragraph following ¶ 9]  Plaintiffs seek to invalidate all of the health orders issued by ODH to fight the spread of the COVID-19, a deadly pandemic which, at this point, needs no introduction.

Plaintiffs' eighty-one page amended complaint contains essentially zero allegations about the Plaintiffs themselves. Instead, Plaintiffs seek to present to the Court abstract constitutional questions detached from any facts relating to Plaintiffs (and based upon mischaracterized news reports[2]).  For example, Plaintiffs seek to invalidate <u>*all*</u> health orders issued after Governor

---

[2]        For example, Plaintiffs repeatedly assert that statistics regarding COVID-19 deaths are inflated based on an alleged financial incentive for hospitals to over-report COVID-19 deaths because each "hospitals are being reimbursed an additional $180,000 per COVID-19 case."    [Am. Cmpl. 22; <u>see also</u> <u>id.</u> at ¶ 24 (describing "the $180,000.00 bonus per case paid out in Ohio")]  But the source of this $180,000 figure is an article about an initial $30 billion round of federal COVID-19 funding that, according to the article cited by Plaintiffs (https://www.beckershospitalreview.com/finance/state-by-state-breakdown-of-federal-aid-per-covid-19-case.html), was criticized by some for being paid out in proportion to "historical share Medicare revenue, *not based on COVID-19 burden*."  (Emphasis added.)  According to the same article, the ratio between (a) dollars of funding received by New York (which saw an early surge of COVID-19 cases) and (b) COVID-19 deaths was $12,000 per COVID-19 death.  In other words, the article that Plaintiffs repeatedly cite as a basis for asserting that each time a hospital reports a COVID-19 death it will be paid $180,000 says no such thing, but instead points out that the COVID-19 funding in question *had not been paid* based upon COVID-19 deaths.

DeWine declared a state of emergency on March 9, 2020 as well as any future health orders ODH may issue in the future as the pandemic continues to evolve.  Plaintiffs seek invalidation of all health orders regardless of whether the orders have any impact on Plaintiffs.

Plaintiffs did each submit affidavits, describing their own COVID-19-related plights, but a review of these affidavits makes it clear why Plaintiffs said next to nothing about themselves in the body of their amended complaint.  These affidavits show that Plaintiffs' claims fall within one of the following buckets: (i) complaints about conduct by non-defendants (e.g., Costco store policy required its customers to wear masks[3]); (ii) complaints about conduct that is actually permitted by the health orders (e.g., complaints about mask mandates by plaintiffs subject to medical exemption[4]); and (iii) general malaise about the reality of living through a pandemic

---

[3] [Affidavit of Tara Calderaros (Doc. 2-2), ¶7a ("Costco eye center refuses to see us, will not honor mask exemptions."); <u>see also</u> Affidavit of Lisa Knapp (Doc. 11) ¶ 7 (describing "mask shaming"); Renee Hedges (Doc. 2-2) ¶7 (describing issues with being forced to wear a mask that occurred before Ohio instituted any mask mandates; describing issues resulting from Cleveland mask ordinance); Jessica Franz (Doc. 2-2) ¶11c (describing doctor's office challenging sincerity of religious views regarding mask wearing); <u>id.</u> at ¶11e (describing college not accepting medical exemption request from non-party adult son of plaintiff); <u>id.</u> at ¶11i-1 (denial of service at various retail establishments due to refusal to wear masks); <u>id.</u> at ¶11n ("My kids and I have been harassed, even at places that have publicly stated they are accepting exemptions…. We have endured eye-rolling, snide remarks, lectures, sighs and glares from employees and managers who think we should be wearing a mask."); Affidavit of Kristen Beckman, (Doc. 2-2) ¶10-11 ("Menards started imposing restrictions that no children under the age of 16 could enter their store….  Costco was the next big store to mandate masks for entry."); <u>id.</u> at ¶12 ("[Our main church was] reopening, but sadly were requiring masks for all to attend. Several members attacked me, claiming things like I was an insensitive, asymptomatic carrier, who was going to kill grandma."); <u>id.</u> at ¶14 (describing having to make "unfortunate decision to stay home" rather than travel to New York City for a funeral Plaintiff and her family might not be able to attend due to funeral home's limitation on number of attendees); Affidavit of Kirsten Hill (Doc. 2-2) ¶3d ("I was unwarrantably shamed in a public meeting in the Amherst Township Hall…."); Affidavit of Eric Calderaros (Doc. 2-2) ¶24 ("since the governor's mask mandate and the State's continued inducement of panic to most Ohioans, including retailers, we have been deprived of these freedoms because all retailers now require masks, many retailers will discriminate against us by not honoring our medical exemptions from masks, and even when they do honor our medical exemptions, it's often at the expense of having to endure public ridicule and shaming….").

[4] Knapp Aff. ¶¶5-6 (citing health issues arising from wearing mask even though mask orders contain medical exemption); <u>id.</u> at ¶14 (asserting that "[a]ll sports camps and other camps have been canceled since the shutdowns in March[, and my son] was not able to participate in any activities for 5 months that would further his skills" even though you camps have been permitted under health orders since June); Hedges Aff. ¶10 (asserting that "[d]ue to the mandated masks, our son will no longer be attending his school, because masking goes against our religious beliefs" even though school mask order includes a religious exemption) Affidavit of Michael Renz (Doc. 2-2) second ¶1 on PAGEID 66 (asserting "[w]e had planned to complete repairs [to bowling alley damaged by vehicle collision] but were unable to complete any of this because of the shutdown" even though construction was an essential service and not subject to stay at home order); <u>id.</u> at ¶5 (asserting "I cannot breathe when I wear a mask[;] I have had health problems and do not think it is safe for me to wear one" even though mask order includes medical exemption); Eric

(e.g., anxiety over having to stock up on food and supplies[5]).  As explained below, none of these provides a basis for Plaintiffs to obtain relief, let alone the sweeping relief they seek of invalidating all of Ohio's public health orders issued in response to COVID-19.

**III.**                                            **LAW AND ANALYSIS**

Plaintiffs' amended complaint must be dismissed for several reasons.  Each reason is discussed in turn, beginning with immunity principles that knock out most of Plaintiffs' claims.  We then turn to the merits of remaining Plaintiffs' claims.

**A.**    **All Claims Against The State Of Ohio Are Barred By Sovereign Immunity.**

We start by noting that the State of Ohio must be dismissed from this action as a Defendant.  "[T]he State of Ohio is *immune* from suit in federal court under the Eleventh Amendment to the United States Constitution."  Shabazz v. Ohio, 2020 U.S. Dist. LEXIS 28944, at *3 (S.D. Ohio Feb. 20, 2020).  Specifically, "[t]he state of Ohio is immune from suit under [42 U.S.C.] § 1983 unless the state has waived its Eleventh Amendment sovereign immunity or Congress abrogated that immunity."  Oliver v. Ohio State Hwy. Patrol, 2019 U.S. Dist. LEXIS 114494, at *3 (N.D. Ohio July 10, 2019) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, (1989)).  "Congress did not abrogate a state's Eleventh Amendment immunity for actions brought pursuant to § 1983, and the state of Ohio has not waived its immunity."  Id.; accord:

---

Calderaros Aff., ¶22 ("My family and I all qualify for medical exemptions from masks."); Tara Calderaros Aff., ¶5 ("I cannot wear a mask for the following medical reasons….").

[5]        Beckman Aff. ¶ 8 ("Due to these unconstitutional [ODH's public health orders], I Have Suffered as follows: Uncertainty at work…. Anxiety over having to stock up on food and supplies…. Anger over psychological warfare being used on society, especially children, to wear masks."); Knapp Aff. ¶ 4 ("The mandates and shutdowns issued by the State of Ohio have negatively affected every aspect of my life…."); Renz Aff. ¶ 4 ("I enjoy traveling and have been unable to go to many of the states that I had been planning to go to."); Franz Aff., ¶ 11a ("As an Ohio citizen, I have been lied to by my governor and by the ODH Director about the Science, data, and facts surrounding Covid-19."); Hill Aff., ¶3a ("I was denied the right to breath[e] fresh air."); Eric Calderaro Aff. ¶ 4  ("Come to find out, Governor DeWine, Lieutenant Governor Husted, former Director of Health, Amy Acton, and current Interim Director of Health Lance Himes, all breached public trust with an abundance of serious constitutional violations and criminal acts, not the least of which was and continues to be, their illegal suppression, manipulation and presentation of incomplete, misleading and false COVID-19 data and models which they use as justification to deprive us 11.7 million Ohioans of what were supposed to be our inalienable rights and freedoms under the Ohio and U.S. Constitutions….").

Biggin v. Ohio, 2019 U.S. Dist. LEXIS 128843, at *7 (N.D. Ohio Aug. 1, 2019) ("The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court…. Here, the State of Ohio has neither waived its sovereign immunity nor consented to suit.") (quotation, citations omitted).

So, too, here, the State of Ohio is immune from suit, and all claims asserted against the State must be dismissed.

**B.**     **All Claims For Monetary Relief Fail As A Matter Of Law.**

Next, we briefly turn to Plaintiffs' request for monetary relief against the remaining State Defendants (Governor DeWine, and former and interim Directors of ODH, Acton and Himes). Paragraph 130 of the amended complaint asserts that Plaintiffs seek monetary damages pursuant to 42 U.S.C. § 1983.

Plaintiffs' claim for monetary relief is barred because Plaintiffs have not sued Defendants DeWine, Acton or Himes in their personal capacity,[6] and sovereign immunity precludes any claim for monetary relief against them in their official capacity:

> The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state *or its instrumentalities* unless the state has given express consent. Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1983); Lawson v. Shelby Cnty., 211 F.3d 331, 334 (6th Cir. 2000). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. Mixon v. State of Ohio, 193 F.3d 389, 397 (6th Cir. 1999). Accordingly, Plaintiff's claims for monetary damages against Defendant in his official capacity fail as barred by the Eleventh Amendment.

---

[6]     "[P]laintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities."  Soper by Soper v. Hoben, 195 F.3d 845, 853 (6th Cir.1999)).

[Cook v. Davis, 2020 U.S. Dist. LEXIS 99013, at \*5 (N.D. Ohio June 5, 2020) (emphasis added)[7]]

Accord: Harnden v. State Dept. of Human & Health Servs., 2018 U.S. App. LEXIS 5649, at \*3 (6th Cir. Mar. 5, 2018) ("The Eleventh Amendment protects a State official from suit for monetary damages in his or her official capacity because a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (quotation omitted); Reed v. Mohr, 2019 U.S. Dist. LEXIS 126699, at \*4 (S.D. Ohio July 30, 2019) ("To the extent Plaintiff sues Defendants in their official capacities for monetary damages, state sovereign immunity bars those claims.").

Based on these principles, Plaintiffs' claim for monetary relief fails as a matter of law.

### C.    Plaintiffs Have No Claims For Prospective Relief Against Defendant Acton.

To recap where we are, Plaintiffs' claims against the State of Ohio and their claims for monetary relief must be dismissed.  This leaves us with claims for injunctive and declaratory relief against Defendants DeWine, Acton and Himes.  But these remaining claims can be narrowed further because Plaintiffs may only pursue claims for *prospective* relief.

As noted by the Southern District of Ohio, "official-capacity § 1983 claims are limited to prospective injunctive relief."  Mitchell v. Ohio State Univ., 2020 U.S. Dist. LEXIS 160824, at

---

[7]    Even if Plaintiffs had sued Defendants DeWine, Acton and Himes in their individual capacities, they would be protected from a claim for monetary relief by qualified immunity.  "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Sweeting v. Schweigtzer, 2019 U.S. Dist. LEXIS 115964, at \*7 (S.D. Ohio July 12, 2019).  "Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial."  Id. at \*7-8.  And, "[q]ualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. at \*8.  Here, Plaintiffs cannot credibly claim that the State Defendants violated any clearly established rights when they took action to protect Ohioans in the midst of a rapidly spreading, unprecedented pandemic.  Indeed, Plaintiffs assert (no less than three times) that this is a case of *first impression*. [Am. Cmpl. ¶¶ 9, 123, and 143]

*18 (S.D. Ohio Sep. 3, 2020).  "[A] plaintiff can sue a state official in his or her official capacity for prospective injunctive relief to end a continuing violation of federal law under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)."  Baker v. DeWine, 2019 U.S. Dist. LEXIS 73698, at *6 (S.D. Ohio May 1, 2019), ("Plaintiff Baker has not requested any injunctive relief from DeWine…. Therefore, Young is inapplicable.").

Here, Plaintiffs concede, as they must, that Dr. Acton is the *former* Director of ODH. [Am. Cmpl., at unnumbered paragraph following ¶9]  Inasmuch as she is not alleged to be acting in any official capacity any more, Plaintiffs have no claim against her for *prospective* relief. Additionally, pursuant to Fed.R.Civ.P. 25(d), Dr. Acton's successor (Defendant Himes) is automatically substituted in place of Dr. Acton.  See Fed.R.Civ.P. 25(d) (when a public officer "resigns[] or otherwise ceases to hold office," "[t]he officer's successor is automatically substituted as a party.").  As such, *all* claims against Defendant Acton must be dismissed.

### D.    This Court Lacks Jurisdiction To Hear Plaintiffs' State Law Claims.

Next, we turn to Plaintiffs' various state law theories (counts two through seven, nine and ten) which are also not properly before this Court.

"[T]he Supreme Court has made clear that federal courts cannot enjoin state officials from violating state law."  Ladd v. Marchbanks, 971 F.3d 574, 582 (6th Cir. 2020).  "A claim that a state official violates state law in carrying out his or her official duties is a claim against the state, which is barred by the Eleventh Amendment, depriving a federal court of jurisdiction to hear the matter."  Ohioans Against Corp. Bailouts, LLC v. LaRose, 417 F. Supp. 3d 962, 975-76 (S.D. Ohio Oct. 23, 2019).  Accord: Otte v. Kasich (In re Ohio Execution Protocol Litigation), 709 F.App'x 779, 782-783 (6th Cir. 2017) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the

10

supreme authority of federal law. On the contrary, *it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law*.") (emphasis added).

And while Plaintiffs purport to invoke this Court's supplemental jurisdiction to cover their state law claims, [Am. Cmpl. ¶ 10], the case law is clear that federal courts may not, under the guise of supplemental jurisdiction, enjoin state officials from violating state law.  Smith v. DeWine, 2020 U.S. Dist. LEXIS 137012, at *26 (S.D. Ohio Aug. 3, 2020) ("This conclusion applies even if . . . supplemental jurisdiction otherwise exists."); Otte v. Kasich, 782-783 (same).

As a result, Plaintiffs' following legal theories are not within this Court's subject matter jurisdiction:

- Counts Two-Four, and Nine: Challenging whether the exigencies giving rise to Governor DeWine's executive order declaring an emergency are still present.[8]

- Count Five: Challenging Governor DeWine's emergency declaration under Section 119.03 of the Ohio Revised Code.

- Count Six: Challenging ODH's health orders under Section 119.03 of the Ohio Revised Code.

---

[8]    To be sure, Plaintiffs cite two U.S. Supreme Court decisions pertaining to the ability of courts, in general, to make a factual inquiry as to whether the exigencies that form the basis for an emergency law continue to be present: Home Building & Loan Assn. v. Blaisdell, 290 U.S. 398 (1934) and Chastleton Corp. v. Sinclair, 264 U.S. 543 (1924).  But these cases are readily distinguishable as they were each appeals from *state court actions* (in the case of Sinclair, a case filed in the Washington D.C. equivalent of a state court) and were reviewable by the Supreme Court because the emergency question was inextricably part of a *federal* constitutional challenge.  The present case presents the opposite situation: state law claims filed in federal court that are beyond this Court's subject matter jurisdiction.  There is no free-floating federal constitutional theory upon which Plaintiffs may seek review of whether the State's declaration of an emergency is consistent with Ohio law.  In any event, the Ohio statutes that authorize ODH to issue public health orders in response to a pandemic (R.C. 3701.13 and 3701.14) do not require the Governor to declare an emergency as a condition precedent to the issuance of health orders.

- Count Seven: Asserting the Ohio General Assembly is required under the Ohio Revised Code to enact enabling legislation before ODH may issue further health orders.

Each of the foregoing counts (plus the "counts" seeking injunctive relief premised upon these theories, counts nine and ten) must be dismissed for lack of subject matter jurisdiction.

**E.    This Court May Not Issue An Advisory Opinion Regarding Hypothetical Future Health Orders.**

By asking the Court to invalidate any future health orders that may be issued in response to COVID-19, Plaintiffs are really asking the Court to issue an unauthorized advisory opinion. This Court lacks jurisdiction to issue an advisory opinion based upon hypothetical facts or future events that may not occur as anticipated, if they occur at all.  Two fundamental propositions of law make this clear.

First, federal courts are courts of limited jurisdiction, and the court's jurisdiction "can never extend beyond the outer limits set by Article III" pursuant to which "the exercise of the judicial power is limited to 'cases' and 'controversies.'"  Chapman v. Tristar Prods., Inc., 940 F.3d 299, 304 (6th Cir. 2019).

Second, the Court may not address issues unless they are ripe for judicial review.  "The ripeness doctrine prevents courts from entangling themselves in abstract disagreements or disputes that involve uncertain or contingent future events that may not occur as anticipated, if the events occur at all."  Boswell v. McGinnis, 1997 U.S. App. LEXIS 19976, at *5-6 (6th Cir. July 29, 1997).

For these reasons, "[c]ourts should avoid passing on questions of public law … that are not immediately pressing, and '*an advisory opinion' describing what the law would be based on hypothetical facts cannot be extracted from a federal court*"—even by agreement of the parties.

Bay Mills Indian Community v. Whitmer, 794 F.App'x 485, 486 (6th Cir. 2019) (emphasis added).   After all, "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by [the Supreme] Court from the beginning."   Sault Ste. Marie v. United States, 9 F.App'x 457, 460 (6th Cir. 2001).

Here, the Court should reject Plaintiffs' invitation to decide the validity of hypothetical health orders that are not before Court.   See People ex rel. Lockyer v. United States Forest Serv., 2006 U.S. Dist. LEXIS 53430, at *6 (N.D. Cal. July 20, 2006) (denying injunction: since "any injunction at this point would be untethered to an existing controversy or factual record" and "would amount to an advisory opinion," "[t]he hypothetical situation plaintiff anticipates is far too vague and remote to warrant an injunction"); Chapman, 940 F.3d at 304 ("The Article III limit on our jurisdiction is important because, if we were to render an advisory opinion, it would be a constitutional violation that is unredressable.").

## F.     Plaintiffs Lack Standing To Pursue Claims Based Upon Conduct Of Non-Parties.

Even a cursory review of Plaintiffs' affidavits demonstrates that Plaintiffs' claims emanate from the actions of non-parties to this action—e.g., retail stores that force Plaintiffs with medical issues to wear masks even though ODH's mask order contains exemptions.

> The Supreme Court has articulated that for a plaintiff to have standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and *not … th[e] result [of] the independent action of some third party not before the court*." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).
>
> [Vapor Technology Assn. v. United States FDA, 2020 U.S. App. LEXIS 31586, at *13 (6th Cir. Oct. 5, 2020) (emphasis added)]

13

If there are retail establishments who are requiring Plaintiffs to wear masks notwithstanding an exemption under Ohio's mask order, then that does not give rise to a claim against the State Defendants.  Plaintiffs' claims, if valid against any defendant, are claims that must be asserted against parties who are not before this Court.

## G.     Plaintiffs' Conclusory Allegations Are Insufficient To Plausibly State A Federal Claim.

Once claims relating to conduct of third parties are stripped away from the amended complaint, we are left with a handful of conclusory allegations.  Count 8 of Plaintiffs' amended complaint asserts a grab-bag of federal constitutional theories that are long on legal argument and short on factual allegations relating to the Plaintiffs.  For example, Plaintiffs assert that "[t]he Right to Work has been abridged."  [Am. Cmpl. ¶ 104]  But Plaintiffs offer no detail as to which public health orders impacted the supposed right to work, which particular plaintiffs were impacted and how.

Plaintiffs' barebones allegations fail to satisfy the pleading standard:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [Bell Atlantic v.] Twombly, 550 U.S. 544 … [(2007)], the pleading standard Rule 8 announces … demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. Id. at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a

> sheer possibility that a Defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557.

> [Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)]

The Sixth Circuit has expounded upon the pleading standard. "According to the Sixth Circuit, the standard described in Twombly and Iqbal 'obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.'" Bowman v. Jones, 2013 U.S. Dist. LEXIS 167216, at *6 (N.D. Ohio Nov. 25, 2013) (quoting Weisbarth v. Geauga Park Dist., 499 F.3d 538, 541 (6th Cir. 2007). Thus, "[a] complaint should be dismissed when it fails to allege enough facts to state a claim to relief that is plausible on its face." Id. at *7.

Here, despite being eighty-one pages in length, Plaintiffs' amended complaint offers nothing more than conclusory allegations about the impact of Ohio's response to COVID-19 on the Plaintiffs themselves. [See, e.g., Am. Cmpl. at ¶ 11 (asserting "Plaintiffs have all suffered substantial injury in various ways due to the State's unconstitutional actions in response to COVID-19" without identifying what those injuries are), at ¶ 99 (asserting "[t]he State's Orders are unconstitutional under Article 1, Section 19 of the Ohio Constitution and the 5th Amendment of the United States Constitution, taking the Plaintiffs' private and personal property without just compensation" but offering no explanation as to what property has supposedly been taken from which Plaintiff), 104.2.c (asserting that "[d]uring the business shutdown client's right to bear arms was substantially burdened by the arbitrary and capricious closure of stores dealing in arms" but failing to identify which Plaintiffs, if any, were allegedly impacted and how); at ¶ 104.3.a (asserting "Plaintiffs have been injured by business closures and being unable to pursue

common occupations of life and earn a living" without identifying which Plaintiffs have been supposedly injured and how)]

Plaintiffs must do more than simply identify constitutional rights and assert those rights have been violated.  Plaintiffs make no effort to establish which public health orders have had which effects on which Plaintiffs.  This is intentional, of course, because Plaintiffs and their counsel are using the this case as an attempt to raise abstract constitutional questions about Ohio's response to COVID-19 that have no factual connection to Plaintiffs, themselves.  The Rule 8 pleading standard (as well as other principles) prevent them from doing so.  Plaintiffs' federal constitutional claims, which are premised upon conclusory allegations, must be dismissed.

### H.    Plaintiffs' Federal Claims Fail On The Merits.

Even if Plaintiffs had sufficiently pleaded their federal constitutional theories to satisfy the Rule 8 pleading standard, those claims would nonetheless fail on the merits.

### 1.    Plaintiffs Present A Disfavored Facial Attack.

First, Plaintiffs do not contend that Ohio's public health measures are unconstitutional as applied to them, but rather, Plaintiffs attack the measures on their face.  As observed by the Supreme Court, a "facial challenge to [a statute or order] … is the most difficult challenge to mount successfully" and will only succeed if a litigant can "establish that no set of circumstances exists under which the [statute or order] would be valid."  United States. v. Salerno, 481 U.S. 739, 745 (1987).

The Supreme Court also has observed that "[f]acial challenges are disfavored for several reasons."  Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450-451 (2008).  Since they "often rest on speculation," "they raise the risk of 'premature

interpretation of statutes on the basis of factually barebones records.'" Id. (quoting Sabri v. United States, 541 U.S. 600, 609 (2004).  Facial challenges also "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'"  Id. (quoting Ashwander v. TVA, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring).

Perhaps most important, facial challenges are inherently anti-democratic: "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Id. After all, "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people."  Id. (quoting Ayotte v. Planned Parenthood of Northern New Eng., 546 U.S. 320, 329 (2006)).

> ### 2.    U.S. Supreme Court Precedent Requires This Court To Afford Wide Latitude To Government Officials Who Exercise The State's Police Power To Protect The Public Health In The Face Of A Pandemic.

Moreover, ODH issued its public health orders pursuant to the police power reserved to the States under the Tenth Amendment of the United States Constitution which includes the authority to enact laws and implement measures that "protect the public health and the public safety."  Jacobson v. Massachusetts, 197 U.S. 11, 25 (1905).  States have the power to protect the health and safety of their citizens both in normal times and in times of a public health emergency:

> The authority to determine for all what ought to be done in such an emergency must have been lodged somewhere or in some body…. To invest [a local board of health] with authority over such matters was not an unusual nor an unreasonable or arbitrary requirement. *Upon the principle of self-defense, of paramount*

17

> *necessity, a community has the right to protect itself against an*
> *epidemic of disease which threatens the safety of its members.*

[Id. at 27 (emphasis added)]

The Supreme Court has long held that a State's exercise of its police powers in the face of a public health emergency is subject to *limited* judicial review—*even where otherwise protected constitutional rights are impacted*—and such emergency measures must be upheld unless they have "no real or substantial relation" to protecting public health and impose "beyond all question, a plain palpable invasion of rights secured by the fundamental law." Jacobson, 197 U.S. at 31.  While Jacobson was decided over a century ago, it applies today with equal force. Just recently, Chief Justice Roberts cited Jacobson and underscored the latitude that courts must afford to government officials responding to the COVID-19 pandemic when he concurred in denying an application for an injunction pending appeal in a case involving limitations on church services.  See South Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613 (2020).   He observed that, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement," and concluded that the latitude afforded to government officials "must be *especially broad*" and "should not be subject to second-guessing by an 'unelected' federal judiciary, which lacks the background, competence and expertise to assess public health." South Bay, 140 S.Ct. 1613, 1613 (emphasis added; quotation omitted).[9]

---

[9]     Amato v. Elicker, 2020 U.S. Dist. LEXIS 87758, at *28-29 (D. Conn. May 19, 2020) ("Jacobson requires that courts refrain from second-guessing state governments' responses [to COVID-19] unless there is 'no real or substantial relation' between the actions and the public health and safety or the action is 'beyond all question, a plain, palpable invasion of rights.' ") (quoting Jacobson); Geller v. De Blasio, 2020 U.S. Dist. LEXIS 87405, at *7-8 (S.D.N.Y., May 18, 2020) ("Over a century ago, the U.S. Supreme Court taught that 'a community has the right to protect itself against an epidemic of disease which threatens its members.'  In such times, judicial scrutiny is reserved for a measure that 'has no real or substantial relation to' the object of protecting 'the public health, the public morals, or the public safety,' or is 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'  As explained by the Supreme Court, a 'court would usurp the functions of another branch of

18

As courts have repeatedly held, <u>Jacobson</u> is "the controlling Supreme Court precedent that squarely governs judicial review of rights-challenges to public health measures."  <u>In re Abbott</u>, 954 F. 3d 772, 785 (5th Cir. 2020).  Under <u>Jacobson</u>, a court's power is *<u>limited</u>* to asking whether the State action during a public health crisis is taken in "an arbitrary, unreasonable manner" or through "arbitrary and oppressive regulations."  <u>Id.</u> at 784 (quoting <u>Jacobson</u>, 197 U.S. at 38). While courts should ask if the measures provide exceptions for extreme cases, they should not "second-guess the wisdom or efficacy of the measures." <u>Id.</u> at 785.[10]

Indeed, "*<u>the traditional tiers of constitutional scrutiny do not apply.</u>*"  Cassell v. Snyders, 2020 U.S. Dist. LEXIS 77512, *17 (N.D. Ill., May 3, 2020) (emphasis added).   Judicial review is limited under <u>Jacobson</u> even when fundamental rights are implicated, "*<u>including First Amendment rights</u>*."  <u>Amato</u>, 2020 U.S. Dist. LEXIS 87758, at *28-29 (emphasis added).  <u>See also Legacy Church, Inc. v. Kunkel,</u> 2020 U.S. Dist. LEXIS 68415, at *129 (D.N.M., Apr. 17, 2020) (applying <u>Jacobson</u> in case relating to religious services); <u>In re Abbott</u>, 2020 U.S. App. LEXIS 12616, at *34-36 (5th Cir., Apr. 20, 2020) (applying <u>Jacobson</u> in case relating to abortion procedures); <u>In re Rutledge,</u> 2020 U.S. App. LEXIS 12893, at *21-22 (8th Cir., Apr. 22, 2020) (applying <u>Jacobson</u> in case relating to abortion procedures); <u>South Bay United Pentecostal Church v. Newsom</u>, 2020 U.S. App. LEXIS 16494, at *3 (9th Cir., May 22, 2020) (applying <u>Jacobson</u> in case relating to abortion procedures).

Following these principles, courts across the country repeatedly rejected similar challenges to public health measures implemented in response to COVID-19.  <u>Hartman v. Acton,</u>

---

government if it adjudged, as matter of law, that the mode adopted under the sanction of the state, to protect the people at large was arbitrary, and not justified by the necessities of the case.'") (quoting <u>Jacobson</u>).

[10]     We note that several courts have held, even under this relaxed standard of review, that slowing the spread of COVID-19 is a "*<u>compelling interest</u>*."  <u>Cassell v. Snyders</u>, 2020 U.S. Dist. LEXIS 77512, at *34 (N.D. Ill., May 3, 2020) (emphasis added); <u>Antietam Battlefield KOA v. Hogan</u>, 2020 U.S. Dist. LEXIS at *33-34 (D. Md., May 20, 2020); <u>Legacy Church, Inc. v. Kunkel</u>, 2020 U.S. Dist. LEXIS 68415, at *117 (D.N.M. 2020); <u>Lawrence v. Colo.</u>, 2020 U.S. Dist. LEXIS 92910, at *23 (D. Colo., Apr. 19, 2020).

19

2020 U.S. Dist. LEXIS 72068, at *17-18 (S.D. Ohio, Apr. 21, 2020) (denying TRO to bridal shop).  See also Altman v. County of Santa Clara, 2020 U.S. Dist. LEXIS 97535, at *18-36 (N.D. Cal., June 2, 2020) (denying preliminary injunction to firearm retailer); Best Supplement Guide, LLC v. Newsom, 2020 U.S. Dist. LEXIS 90608, at *8-14 (E.D. Cal., May 22, 2020) (denying TRO to gym); Benner v. Wolf, 2020 U.S. Dist. LEXIS 89425, at *15-18 (M.D. Pa., May 21, 2020) (denying TRO to business owners and political candidates); Antietam Battlefield KOA v. Hogan, 2020 U.S. Dist. LEXIS 8883, at *3-18 (D. Md., May 20, 2020) (denying TRO and preliminary injunction to numerous parties including a campground and an "adventure park"); Shows v. Cochran, 2020 U.S. Dist. LEXIS 71669, at *3 (W.D.N.C., Apr. 23, 2020) (denying TRO to individual challenging curfew imposed on nonessential businesses); Sh3 Health Consulting, LLC v. St. Louis County Exec., 2020 U.S. Dist. LEXIS 81433, at *16-29 (E.D. Mo., May 8, 2020) (denying TRO to gym and antique store); Geller v. Cuomo, 2020 U.S. Dist. LEXIS 137863, at *2 (S.D.N.Y. Aug. 3, 2020) (denying preliminary injunction enjoining defendants from enforcing restrictions on non-essential gatherings so that plaintiff can organize a protest of between 25-100 people); Vill. of Orland Park v. Pritzker, 2020 U.S. Dist. LEXIS 136833, at *2 (N.D. Ill. Aug. 1, 2020) (denying TRO and preliminary injunction to restaurant and bar owner and a village that sought to employ its own plan for reopening its businesses); Slidewaters LLC v. Wash. Dep't of Labor & Indus., 2020 U.S. Dist. LEXIS 125955, at *2 (E.D. Wash. July 14, 2020) (denying motion for preliminary injunction, converted to a request for a permanent injunction to water park owners and dismissing complaint with prejudice); Xponential Fitness v. Arizona, 2020 U.S. Dist. LEXIS 123379, at *2 (D. Ariz. July 14, 2020) (TRO and preliminary injunction denied to owners of boutique fitness studios); Ass'n of Jewish Camp Operators v. Cuomo, 2020 U.S. Dist. LEXIS 117765, at *1 (N.D.N.Y. July 6, 2020) (denying preliminary

injunction to operators of overnight camps); <u>Talleywhacker, Inc. v. Cooper</u>, 2020 U.S. Dist. LEXIS 99905, at *3 (E.D.N.C. June 8, 2020) (denying preliminary injunction to owners of entertainment venues that provide dance performances and presentation of live and recorded music presented by singers, bands and or disc jockeys as well as serving alcoholic and non-alcoholic beverages).

Of particular note is the Sixth Circuit's decision in <u>League of Indep. Fitness Facilities & Trainers, Inc., v. Whitmer</u>, 2020 U.S. App. LEXIS 19691 (6th Cir., June 24, 2020) (hereinafter <u>Whitmer</u>).  <u>Whitmer</u> concerned a challenge by owners and operators of indoor fitness facilities in Michigan, which remained closed in most parts of the state by the Governor's order allowing a phased reopening of businesses.  The <u>Whitmer</u> Plaintiffs contended that the order violated, among other constitutional protections, equal protection because it treated indoor fitness facilities (which remained completely closed) different from bars, restaurants, and salons (which were allowed to open with restrictions).  <u>Id.</u> at *3.  While the trial court preliminarily enjoined enforcement of the health order, the Sixth Circuit held that the Governor was entitled to an emergency stay of a district court's grant of a preliminary injunction.

The Sixth Circuit noted that, similar to Ohio, Michigan "has taken an 'incremental approach' to reopening sectors of the economy closed in response to COVID-19."  <u>Id.</u> at *2.  Applying the preliminary injunction factors, which also apply to a request for a stay, the Sixth Circuit held that the plaintiffs failed to show a likelihood of success on the merits of their equal protection challenge to Michigan's phased reopening.  <u>Id.</u> at *4-9.

The Sixth Circuit began its analysis by noting the limited role of the courts in reviewing orders aimed at combatting the spread of COVID-19:

> All agree that the police power retained by the states empowers state officials to address pandemics such as COVID-19

> *largely without interference from the courts*.  Jacobson v.
> Massachusetts, 197 U.S. 11, 29, 25 S. Ct. 358, 49 L. Ed.
> 643 (1905). This century-old historical principle has been reaffirmed
> just this year by a chorus of judicial voices, including our own.

> [Id. at *4-5 (emphasis added)]

The Sixth Circuit then explained that while "[t]he district court granted the injunction

primarily because the Governor did not adequately explain during the hearing below her

somewhat unique treatment of indoor fitness facilities," id. at *6-7, the Governor's failure to

adequately articulate the reasoning behind Michigan's phased reopening was irrelevant:

> The district court granted the injunction primarily because the
> Governor did not adequately explain during the hearing below her
> somewhat unique treatment of indoor fitness facilities, relying
> instead on conclusory statements that gyms are 'dangerous.' While
> perhaps a fair critique of the statements made during the hearing,
> that observation to overlooks rationales offered by the Governor in
> her briefing…. More to the point, unlike exacting forms of scrutiny
> applied in other contexts, *the Governor was not required to explain*
> *that choice at all, let alone exhaustively*…. Rather, the relevant
> standard merely requires 'rational speculation' that offers
> 'conceivable' support to the Governor's order….

> … Whether the Governor's Order is unsupported by evidence or
> empirical data in the record does not undermine her decision, at
> least as a legal matter…. After all, we must accept [the
> Governor's] generalizations even when there is an imperfect fit
> between means and ends.

> [Id. at *6-8 (emphasis added; citations,
> quotations omitted)]

As noted, "the relevant standard merely requires '*rational speculation*' that offers

'*conceivable*' support to the Governor's order," and as the Sixth Circuit emphasized, this is

"[e]specially so … in the case of a public health crisis like the one presented by COVID-19,

where '*[the State's] latitude must be especially broad*.'"  Id. at *6 (emphasis added, quoting

South Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J.,

concurring)).  Stated differently, "the Governor's action is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  Id. at *6.  Thus, the Sixth Circuit accepted the Governor's stated basis for the order, holding that the Governor's conclusion that "heavy breathing and sweating in an enclosed space containing many shared surfaces creates conditions likely to spread the virus is a paradigmatic example of 'rational speculation' that fairly supports the Governor's treatment of indoor fitness facilities."  Id. at *8.  The Sixth Circuit therefore held that the plaintiffs lacked a likelihood of success on the merits.

Here, Plaintiffs invite the Court to engage in the exact type of second-guessing that the Sixth Circuit and Chief Justice Roberts warned against.  Plaintiffs undoubtedly disagree with the scientific and medical experts that Ohio has relied upon in shaping its response to the COVID-19 pandemic, but Courts must provide wide latitude to public officials as they seek to protect the health and lives of Ohioans in the face of a pandemic—indeed, "rational speculation" is sufficient.  Because Ohio's public health orders unquestionably bear a "real or substantial relation" to protecting public health, they must be upheld under Jacobson.  The mere fact that Plaintiffs, or their counsel, would have done something different if they were in charge is irrelevant.

Just like the many courts that have upheld public health orders aimed issued in response to COVID-19,[11] this Court should dismiss Plaintiffs' claims.  The State need only possess

---

[11]      In addition to the cases cited above, see Castillo v. Whitmer, 2020 U.S. App. LEXIS 28044, at *1 (6th Cir. Sep. 2, 2020) (upholding district court denial of TRO sought by agricultural business owners and employees barring enforcement of an emergency order issued by the Michigan Department of Health and Human Services imposing COVID-19 testing protocols on employers and housing providers in certain agricultural settings); TJM 64, Inc. v. Harris, 2020 U.S. Dist. LEXIS 134037, at *1 (W.D. Tenn. July 29, 2020) (denying TRO to bars and limited service restaurants); 4 Aces Enters., LLC v. Edwards, 2020 U.S. Dist. LEXIS 147721, at *32 (E.D. La. Aug. 17, 2020) (denying bar owners' motion for preliminary and permanent injunctive relief because bar owners could not succeed on the merits of their claim that the Governor's enforcement of the ban of on-site consumption of food or drinks at

rational speculation to supports its remedial efforts.  The fact that countries across the world and each of the fifty states have adopted comparable restrictions to combat the virus, as to which this Court can take judicial notice,  readily satisfies this standard.

## IV.                                CONCLUSION

For all these reasons, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

DAVE YOST, Ohio Attorney General

/s/  Marion H. Little, Jr.
John W. Zeiger (0010707)
Marion H. Little, Jr.  (0042679)
SPECIAL COUNSEL
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 S. High Street
Columbus, Ohio  43215
Telephone:  (614) 365-9900
Facsimile:  (614) 365-7900
zeiger@litohio.com
little@litohio.com

*Counsel for Defendants State of Ohio, Governor Mike DeWine, Amy Acton, Former Director of the*

---

'bars' violated their Fifth and Fourteenth Amendments under the "demanding Jacobson/Abbott standard"); 910 E Main LLC v. Edwards, 2020 U.S. Dist. LEXIS 152366, at *34 (W.D. La. Aug. 21, 2020) (denying preliminary injunctive relief to bar owners after evidentiary hearing finding owners unlikely to succeed on the merits under Jacobson); Aguila v. Ducey, CV2020-010282 (Sup. Ct. Ariz. Maricopa Cty. Sept. 8, 2020 (slip op.) (denying TRO to bars based on equal protection and takings claims); ARJN #3 v. Cooper, 2020 U.S. Dist. LEXIS 186058, at *3 (M.D. Tenn. Oct. 7, 2020) (denying preliminary injunction to restaurant owners seeking to enjoin enforcement of COVID order regarding restaurants); Columbus Ale House, Inc. v. Cuomo, 2020 U.S. Dist. LEXIS 191828, at *2 (E.D.N.Y. Oct. 15, 2020) (denying preliminary injunction enjoining New York Governor from enforcing a rule prohibiting service after midnight in New York City food service establishments); Robinson v. Murphy, Civil Action No. 20-5420, 2020 U.S. Dist. LEXIS 185070, at *2 (D.N.J. Oct. 2, 2020) (denying TRO and preliminary injunction to enjoin enforcement of executive orders that limit the number of individuals who may gather indoors for religious purposes and that extend certain mask requirements to religious services); Best Supplement Guide, LLC v. Newsom, 2020 U.S. Dist. LEXIS 90608, at *8-14 (E.D. Cal., May 22, 2020) (denying TRO to gym); Calvary Chapel v. Mills, No. 1:20-cv-00156-NT, 2020 U.S. Dist. LEXIS 81962, at *2 (D. Me. May 9, 2020) (denying temporary restraining order to chapel seeking to enjoin enforcement of governor's order limiting size of gatherings to ten people), injunction pending appeal denied by, No. 20-1507, 2020 U.S. App. LEXIS 18406, at *2 (1st Cir. June 2, 2020).

*Ohio Department of Health, and Lance D. Himes,*
*Interim Director of the Ohio Department of Health*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 6, 2020, a copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/  Marion H. Little, Jr.
Marion H. Little, Jr.  (0042679)

1230-022:879537