IN THE UNITED STATES DISTRICT
COURT WESTERN DIVISION FOR THE
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| __Michael Renz, Eric Calderaro, et. al__ , | ) | |
| Plaintiff | ) | CASE NO. _3:20-cv-1948_ |
| Attorneys: | ) | |
| Thomas Renz (Bar ID 98645) | ) | |
| 1907 W State St. #162 | ) | |
| Fremont, OH 43420 | | |
| | | |
| & | | |
| | | |
| Robert Gargasz (Bar ID 7136) | | |
| 1670 Cooper Foster Park Rd. | | |
| Lorain, OH 44053 | | |
| | | |
| -vs- | ) | JUDGE: Carr |
| | ) | |
| | ) | |
| | ) | |
| _State of Ohio, Gov. Mike DeWine, Lance Himes,_ | ) | PLAINTIFFS' RESPONSE |
| et al. | | TO 12b BY DEFENDANTS |
| | | STATE OF OHIO, et al. |
| | | |
| Defendant(s) | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE TO 12B MOTION TO DISMISS BY
STATE OF OHIO, GOVERNOR MIKE DEWINE,
LANCE HIMES, AMY ACTON**

Plaintiffs, by and through their attorneys of record, hereby submit this Response to

Defendants' Motion to dismiss filed by State of Ohio, Governor DeWine, Lance Himes and Amy

Acton. For the  foregoing reasons, this Motion should be denied.

## Response

1. Rule 8 of the Federal Rules of Civil Procedure states:

   a. (a) Claim for Relief. A pleading that states a claim for relief must contain:

      i. (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

      ii. (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

      iii. (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

      And

   b. (d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.

      i. (1) In General. Each allegation must be simple, concise, and direct. No technical form is required.

      **ii.** (2) Alternative Statements of a Claim or Defense. A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. **If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. [EMPHASIS ADDED]**

      iii. (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

   **c. (e) Construing Pleadings. Pleadings must be construed so as to do justice. [EMPHASIS ADDED]**

2.  Arguably, Plaintiffs could have done nothing more to meet the standards in this rule than to have used the allegations in the Plaintiffs affidavits that were incorporated by reference, referenced the law showing entitlement to relief, and completed with a demand for relief sought.

3.  Plaintiffs did do all of these things, however, given the demonstrated complete and utter disregard shown by Defendants for the law in response to COVID-19, what was all but certain to be a misguided response by the Defense citing cases taken out of context such as *Jacobson v Massachusetts* 197 U.S.11(U.S. 1905), and the fact that such a tremendous amount of disinformation was being promulgated by the Defendants in this case, it became necessary to include substantial amounts of relevant information within the complaint. The inclusion of that information, however, does not change the requirement for a pleading.

4.  Each Plaintiff was injured in numerous ways, including through Constitutional violations, which are described in detail in the Supporting Documents and Affidavits contained therein, filed with the Complaint, and incorporated into the Amended Complaint and here. These violations include, but are not limited to the following examples:

    a.  Lockdowns, closures and restrictions of recreational and entertainment businesses, restaurants, and being under house arrest- depriving each and every Ohioan of freedom to peacefully assemble and gather; and move freely about.

    b.  Discrimination in being deprived of goods and services which were available to people who complied with the mask wearing mandates, in violation of the Equal Protection Clause (Calderaro, Renz, Hedges);

    c.   Violations of the right of religious expression in being made to wear masks and inability to attend church and enjoy fellowship (Hedges, Franz, Beckman);

    d.   Increased stress, anxiety and psychological deterioration due to the oppressive restrictions that have nothing to do with controlling a virus with over 99% survival rate (all plaintiffs);

    e.   Financial losses in the form of not being able to perform work due to inability to wear facemasks (Hill);

    f.   Inability to freely travel out of state (Renz), including to attend funeral of relative due to quarantine restrictions upon returning (Beckman);

    g.   House arrest for elderly relatives in nursing homes (Renz)

    h.   Loss of liberties for school aged children who were deprived of the right to assemble for graduation, sports and the like (Hedges, Franz)

5.   These injuries are either ongoing or clearly have the potential of occurring again and the Governor of Ohio has made it clear that he will not hesitate to implement any of these unconstitutional measures again.

6.   The Court has the ability to remedy these injuries by granting the requested relief.

7.   Plaintiffs find it disconcerting that the State seems to be arguing that, under the guise of a claimed public health emergency that the Plaintiffs and the public should be denied the right to contest the denial of their Constitutional and other rights on nothing more than a motion. The idea of requesting a 12b motion when there were numerous clearly stated Constitutional violations in a complaint that met the standards necessary under the Federal Rules frankly indicates a true lack of appreciation for the gravity of the situation. Further, this illustrates the State's malice in seeking these unconstitutional mandates.

8.  Ultimately this motion cannot stand and Plaintiffs believe that instead of wasting the Court's and Plaintiff's time the Defense should be rushing to get to discovery if the emergency they contend exists is real and they have nothing to hide.

## Sovereign Immunity & the 11th Amendment

9.  Before beginning this discussion, it is worth noting that the State is conflating 11th Amendment immunity between injunctive relief and damages and also between the State and officials in their individual capacity. They are different questions, and all end up working in favor of the Plaintiffs. Injunctive relief is always available against officials for violations of Constitutional rights as discussed below. Further, new precedent from the Supreme Court makes it clear that damages are available for violations of such rights.

10.  Plaintiffs will discuss *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 1908 U.S. LEXIS 1726, 52 L. Ed. 714 below in terms of sovereign immunity but point out that even under the *Young* doctrine the Court made it exceedingly clear that jurisdiction over unconstitutional actions of officials is within the Court's purview for review.

11.  While Plaintiffs recognize the role of the 11th Amendment, *Young* has made clear that individual officials may be restrained from violating Constitutional law. *Young* was based on the legal fiction that separated individual officials from their role as parts of the state when they violated the Constitution. This was further supported in the more recently decided, *Tanzin v. Tanvir.* 592 U.S. _ (2020). For purposes of this case, the State officials were named both individually and as representatives of the State within the complaint as Plaintiffs believe both should apply but the case moves forward if either applies.

12.  Further, under the Religious Freedom Restoration Act and *Roman Catholic Diocese of Brooklyn, New York v. Andrew M Cuomo, Governor of New York,* 592 U. S. ____ (2020) it certainly appears that sovereign immunity is waived by statute regarding violations of

religious freedom which have been discussed in the complaint. The Civil Rights Act of 1964 bans religious discrimination and allows sovereign immunity to be set aside *Fitzpatrick v. Bitzer*, 427 U.S. 445 (this applies to religious exemptions for masks, testing, and vaccinations), and Plaintiffs intend to argue that the Americans with Disabilities Act also allows for such actions.

13. With very few exceptions, the questions presented in the complaint involve violations of federal statutes and Constitutional rights throughout the state that impact the Plaintiffs. In regards to sovereign immunity by the State itself, the plain language of the 11th Amendment makes it abundantly clear that it was meant to be a guard against "… any suit in law or equity, commenced or prosecuted against one of the United States by citizens of **another state** [EMPHASIS ADDED]…". While Plaintiffs recognize that caselaw exists that contends otherwise, we argue that, particularly in a unique case such as this, where violations of federal Constitutional and statutory law are so rampant, the plain language of the 11th Amendment should be controlling in any Constitutional action. In other words, citizens of a state should be allowed to commence suit against their own state for Constitutional violations. Any other interpretation is both a miscarriage of justice and a violation of the plain language of the 11th Amendment and Section 2 Article 3 of the Constitution.

14. This brings us to *Young*. The overly broad statement in *Young* in which the Court stated that the 11th Amendment "applies to a suit brought against a State by one of its own citizens as well as to a suit brought by a citizen of another State" cites *Hans* v. *Louisiana,* 134 U.S. 1. This language was a substantial expansion of the holding in that case and, we believe, not supported by the citation. In that case the Court noted that sovereign

immunity stems from legislative actions taken by the state – NOT executive fiats. The Court specifically says:

   a.  "The legislative department of a state represents its polity and its will; and is called upon by the highest demands of natural and political law to preserve justice and judgment, and to hold inviolate the public obligations. Any departure from this rule, except for reasons most cogent (of which the legislature, and not the courts, is the judge), never fails in the end to incur the odium of the world, and to bring lasting injury upon the state itself. To deprive the **legislature [EMPHASIS ADDED]** of the power of judging what the honor and safety of the state may require, even at the expense of a temporary failure of a state to discharge its public debts, would be attended with greater evils than such failure can cause."

15. The Court cites Section 2 Article 3 of the Constitution but seems to lose site of the fact that it states that "judicial power shall extend to all cases in law and equity arising under this Constitution…" This clearly indicates that Constitutional violations should always be available within federal courts. Further, the 11th Amendment simply acts to limit the ability of citizens from another state to file suit against a state. This was even noted when the Court stated:

   a.  "This was necessary for the establishment of justice, and to insure that domestic tranquility which was among the chief objects of the Constitution; because controversies would inevitably arise between the States themselves, as well as between the States and citizens of sister or foreign states, which **might not involve any question arising under the Constitution or laws of the United**

**States** [EMPHASIS ADDED], jurisdiction over which had already been given in all cases, without regard to parties, whether States or individuals.

16. From this, the law continued to develop from the Court – not the Constitution. This is an incredible example of the dangers that come from ignoring the text of the law and creating precedence based on intent. The entire idea that a citizen may not sue her own state is a clear violation of the plain text of the 11th Amendment. At one point, 140 years ago, our Supreme Court determined that the plain text of an Amendment to the Constitution was not in line with a decision they wanted to make and that decision ended up essentially having the impact of changing the plain language of the Constitution over time.[1]

17. This was clearly demonstrated in the opinion of the Court where, referring to dicta from Hamilton discussing Section 2 Article 3 it stated:

    a. "… and between a State and foreign states, citizens or subjects." It was argued by the opponents of the Constitution that this clause would authorize jurisdiction to be given to the federal courts to entertain suits against a State brought by the citizens of another State, or of a foreign state. **Adhering to the mere letter, it might be so; and so, in fact, the Supreme Court held in _Chisholm v. Georgia_;** **[EMPHASIS ADDED]**

18. This is the Court openly admitting that it had overturned precedence that was based on the plain language of the law to prohibit challenging legislatively authorized actions. Plaintiffs believe that ignoring the plain language of the Constitution and 11th

---

[1] Plaintiffs obviously disagree with this decision but place this footnote to clarify our respect for the Court. While Plaintiffs Counsel truly believe it to be an honor to serve the Courts, we also recognize the importance of challenging precedent that was created in error – even if it was from our esteemed Supreme Court.

Amendment was well beyond the Court's authority and done in error – even the Supreme Court may not ignore the plain language of the Constitution.

19. The ultimate result of this error is that now Plaintiffs are faced with a massive Constitutional breakdown on a State level and the State is contending that, despite such Constitutional violations (which the Defense apparently agrees are occurring – *see* Facial Attacks section below) Plaintiffs cannot challenge those violations in federal court. Also, because of the cumulative effect of this precedence, the Court today is in the unenviable position of having to distinguish precedence or violate the plain language of the law.

20. Plaintiffs believe that the Court can distinguish this in two ways. First, had the actions of the executive branch members of the State of Ohio been taken under legislative authority rather than "emergency powers" (please note that by definition an emergency is not something that lasts for 9 months) the *Young* ruling would be more likely to apply. What has happened in Ohio has occurred, primarily, as a result of the executive branch of Ohio's Government pretending it is a monarchy rather than a coequal branch of the government which was clearly not considered in *Hans*.

21. While Plaintiffs strongly believe and ask the Court to rule that the plain language of the 11th Amendment should apply and sovereign immunity should be waived with regards to Constitutional or federal statutory violations taken by a State, Plaintiffs ask, in the alternative, that the Court recognizes that the Court- created sovereign immunity that isbeing applied to citizens in regards to suits against  their own state is limited to actions that are legislatively created.

22. To Plaintiffs knowledge this approach is untested in the Courts. Further it follows other instances that have limited the mistakes of precedence past where Congressional acts

were determined to allow for the abrogation of such immunity *Green v. Mansour*, 474 U.S. 64, 68, 88 L. Ed. 2d 371, 106 S. Ct. 423. In this case, while individuals may still be enjoined and this case may still go forward, the text of the 11th Amendment should also be respected.

23. This leads to the second means by which the sovereign immunity doctrine should be distinguished – Constitutional questions. As noted above, the Supreme Court has ruled in *Green* that federal statutes may abrogate sovereign immunity. It would naturally follow that, given the importance of the United States Constitution as the supreme law of the land, any question of Constitutionality would also be available. Given that blanket sovereign immunity does not and should not exist under the law, it is difficult to imagine that states would continue to be immune from Constitutional questions in federal court, this particularly in light of Section 2 Article 3 of the Constitution.

24. Outside the question of sovereign immunity is the question of the applicability of the complaint to the individual Defendants. It is difficult to imagine a situation where a group of individuals has violated more Constitutional rights than has occurred in Ohio over the last 9 months. From the statewide house arrest, the limitations on movement and/or travel, the unequal application of the law in terms of freedom of assembly, the continual house arrest that is occurring when healthy people are ordered to quarantine, curfew, to interference with the Second Amendment, the right to privacy, to any of the many other issues noted in the complaint, the Defendants have used the faux emergency to violate the Constitutional rights of Ohioans. As noted above, sovereign immunity should not apply to the State and does not apply to the State officials with regards to Counts 2, 3, and 4. Further, as noted in the case, both *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924) and

*Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934) where state or District of
Columbia laws were created under an emergency, clearly put this case within the purview
of the Court's jurisdiction as, "Whether the emergency still exists upon which the
continued operation of the law depends is **always** [emphasis added] open to judicial
inquiry." *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934). P. 290 U. S.
442.

25. Very recently, the United States Supreme Court affirmed Plaintiffs' position that both
injunctive relief and damages are available. In *Tanzin v. Tanvir.* 592 U.S. _ (2020) we
find the following very relevant quotes:

    a. "We first have to determine if injured parties can sue Government officials in
their personal capacities. RFRA's text provides a clear answer: They can. Persons
may sue and obtain relief "against a government," §2000bb–1(c), which is
defined to include "a branch, department, agency, instrumentality, and *official (or
other person acting under color of law*) of the United States." §2000bb–2(1)
(emphasis added)." We ask the Court to note that the RFRA was charged in
paragraph 103, page 63 of the complaint and also that numerous instances were
noted in Plaintiffs affidavits of interference with their rights to practice their
religion freely.

    b. "In the context of suits against Government officials, damages have long been
awarded as appropriate relief. In the early Republic, "an array of writs . . . allowed
individuals to test the legality of government conduct by filing suit against
government officials" for money damages "payable by the officer." Pfander &
Hunt, Public Wrongs and Private Bills: Indemnification and Govt Accountability

in the Early Republic, 85 N. Y. U. L. Rev. 1862, 1871–1875 (2010); see *id*., at

1875, n. 52 (collecting cases). These common-law causes of action remained

available through the 19th century and into the 20th. See, *e.g.*, *Little* v. *Barreme*, 2

Cranch 170 (1804); *Elliott* v. *Swartwout*, 10 Pet. 137

(1836); *Mitchell* v. *Harmony*, 13 How. 115 (1852); *Buck* v. *Colbath*, 3 Wall. 334

(1866); *Belknap* v. *Schild*, 161 U.S. 10 (1896); *Philadelphia Co*. v. *Stimson*, 223

U.S. 605, 619–620 (1912) ("The exemption of the United States from suit does

not protect its officers from personal liability to persons whose rights of property

they have wrongfully invaded")."

c.   "Damages are also commonly available against **state and local government**

**officials** {EMPHASIS ADDED]. In 1871, for example, Congress passed the

precursor to §1983, imposing liability on any person who, under color of state

law, deprived another of a constitutional right. 17Stat. 13; see

also *Myers* v. *Anderson*, 238 U.S. 368, 379, 383 (1915) (affirming award of

damages against state election officials)."

d.   "There is no doubt that damages claims have always been available under §1983

for clearly established violations of the First Amendment.

See, *e.g., Sause* v. *Bauer*, 585 U. S. ___ (2018) (*per curiam*) (reversing grant of

qualified immunity in a case seeking damages under §1983 based on alleged

violations of free exercise rights and Fourth Amendment

rights); *Murphy* v. *Missouri Dept. of Corrections*, 814 F.2d 1252, 1259 (CA8

1987) (remanding to enter judgment for plaintiffs on a §1983 free speech and free

exercise claims and to determine and order "appropriate relief, which . . . may, if appropriate, include an award" of damages)."

26. Another recent Supreme Court decision, *New York State Rifle & Pistol Association, Inc. v. City of New York*, 590 U.S. ___ (2020), is also relevant here. In that case a Constitutional question related to the Second Amendment was asked of the Court. The Court ruled that the question was moot but remanded the case while allowing the petitioners to add the damages claim. This is a clear statement from the Court that damages are a legitimate remedy in the event of a Constitutional violation and also a further demonstration of the absurdity of Defendants' proposition that this Court does not have authority to decide this case. It also bears noting that the Court felt that the Second Amendment issue in this case (regarding a city rule related to the transportation of firearms) was important enough to hear – Ohio shut down firearms stores entirely as non-essential which is clearly a 2nd Amendment violation.

27. All of this makes clear that this Court clearly has jurisdiction over this suit and that the Defendants are subject to liability. The concept of "prospective relief" was not followed by the Supreme Court in any of the above-cited law, nor is it relevant here.

28. Plaintiffs also note that the Complaint named both the State of Ohio and the various officials. These officials were included individually and are being sued both as representatives of the state and in their individual capacities. Prior to discovery it is unclear whether the violations of the law that have occurred were done in bad faith (which would bar any claimed immunity that may or may not apply) or simply in their official capacity though Plaintiffs do not believe damages should be barred in either event. What is not unclear is that the actions taken by these officials is and was

unconstitutional and that both damages and injunctive relief are available for Constitutional violations.

29. All of this is relevant in that Defendant Acton clearly violated numerous Constitutional rights of the Plaintiffs and may be liable. At this point, Governor DeWine has appointed a new Public Health Director that Plaintiffs will request to be added to this suit; however, the same applies for former Director Himes. In fact, Plaintiffs believe that the question of damages related to Constitutional violations will apply even more directly to former Director Himes and Governor DeWine as they are both attorneys and should have recognized the egregious nature of these actions. Plaintiffs also believe it will be relevant to use a heightened standard to determine whether this was done in "bad faith" given that Ohio law requires that the director of public health be either:

   a. "(A) A physician holding the degree of doctor of medicine from a medical college approved by the state medical board who, before assuming his duties, has been licensed to practice medicine in the state and who has had experience in pursuing some phase of medical practice;

   b. (B) An individual who has had significant experience in the public health profession."[2]

30. This indicates that there is a presumption that the individual in this role is qualified and will make informed decisions. If a person were to accept this position without the requisite qualifications required under the law, it would follow that this person would still be held to the same standards as one that was qualified. Further, Plaintiffs believe that decisions made that were not in line with those made by someone that is "qualified"

---

[2] ORC 121.10

under the law would still be subject to that same high standard of review. Given the facts of this case, as laid out in the complaint, it would certainly rise to the level of a legitimate question of fact and/or law as to whether any of the directors of health had violated the law.

## State Law Claims

31. State law claims are properly before this Court under 28 USCS § 1332. Counts 5 and 6 are the only questions brought before this Court not involving federal questions and those are properly before the Court under 28 USCS § 1332. Plaintiffs assert that and argue Count 7 under both federal and state law and so this Count is also properly brought before the Court.

32. Plaintiffs are somewhat confused by the fact that the Defense has cited District and Circuit decisions as a basis to ignore the two controlling Supreme Court decisions regarding this case while affirming the controlling nature in a footnote that states those cases were, "reviewable by the Supreme Court because the emergency question was inextricably part of a federal constitutional challenge." *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924) and *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934).

33. The list of unconstitutional actions taken by the state under the guise of an emergency is endless in this case. Plaintiffs are not sure how quarantining healthy people statewide, closing and restricting business activities and lawful livelihoods, interfering with religious freedom, abridging freedom of movement, and other violations could be any more "inextricably part" of this federal Constitutional challenge than they are or how that could have been made more clear in the complaint.

34. Ultimately it appears that the Defense would ask the Court to ignore these violations, as well as controlling Supreme Court precedent, and pretend that this is simply a state law

question which could then only lead to the inexorable conclusion that the Defense believes that under an emergency the Constitution should not apply to a State action. While it probably does not need to be stated, this conclusion is unconstitutional and borders on absurdity.

## Future Public Health Orders Under the Emergency Declaration

35. Plaintiffs are not requesting an advisory opinion. Plaintiffs have asked that the Court provide injunctive relief against the emergency declaration as it pertains to COVID-19 since it is unsupported by the facts and any exigencies that may have existed no longer do. There is no question that numerous Constitutional rights have been violated under the guise of this alleged emergency and that it is within the Court's jurisdiction to review this. If the Court grants injunctive relief against this emergency it would naturally follow that existing orders related to this emergency would be invalidated and that no future orders could be issued under the guise of emergency authority that the State claims it has (Plaintiffs dispute this).

36. Plaintiffs have also asked the Court whether it is Constitutional for an executive branch to declare a public health emergency without any checks or balances – meaning authorization from a legislative body. This question may appear to be a question reserved for the states but it is not.

37. Inherent to emergency powers is the concept that certain laws and regulations may be suspended for an extremely limited amount of time to deal with a pressing public need. Plaintiffs recognize the need for certain powers to be granted for extremely limited amounts of times when circumstances are critical. That said, the Supreme Court just noted that "even in a pandemic, the Constitution cannot be put away and forgotten."

*Roman Catholic Diocese of Brooklyn, New York v. Andrew M Cuomo, Governor of New York,* 592 U. S. \_\_\_\_ (2020).[3]

38. Plaintiffs  assert that either a State has no legal capacity to suspend Constitutional rights in an emergency unless equal or higher standards apply to review such action as would occur in a non-emergency (we argue in the complaint that higher standards should apply), or such power would necessarily be subject to some check/balance. It is simply without any merit to suggest that the founding fathers, any Amendment, or any Congress since the beginning of our nation would have authorized or intended any state to be able to declare an unending emergency and permanently suspend Constitutional rights without some sort of check on that power.

39. Plaintiffs assert any emergency allowing for suspension of any Constitutional or statutorily protected rights can only be available for an extremely limited time without going through the legislative and/or rulemaking process. Given that this suspension of rights has occurred or is occurring, a ruling in the Plaintiffs' favor would have the effect of blocking future actions taken under the guise of an emergency that do not meet the standards set forth therein.

## Claims Against Non-Parties?

40. Plaintiffs have not leveled claims against non-parties but rather have brought up numerous instances of violations of the law resulting from orders issued by the State. Plaintiffs are not seeking relief from non-parties to this action.  Defendants wish to shift the  blame for injury to  the actions of non-parties, who are being compelled to  enforce

---

[3] Plaintiffs note that the "emergency" aspect of the purported pandemic was not challenged in that case. While Plaintiffs absolutely challenge that here, the Court's note that even a pandemic does not abrogate our Constitution is consistent with similar language used in both the *Blaisdell* and *Sinclair* cases cited within this document.

illegal laws. These parties are not responsible, as their actions were the direct, intended and predictable result of the illegal executive and public health orders.

## The Merits
### Facial Attack

41. We begin the discussion on the merits by restating the previous section, pointing to the Plaintiff Affidavits that were integrated by reference into the Complaint, and noting that throughout the Complaint numerous examples of Constitutional violations that the Plaintiffs have endured were given. Plaintiffs absolutely contend that the numerous violations of the law and Constitution apply to them and do not see how this charge can be made in good faith.

    a. Page 8, under heading Parties - Plaintiffs affidavits are attached and incorporated by reference. These affidavits listed numerous violations of the individual rights of the Plaintiffs that occurred due to the Defendant's actions.

    b. Page 56, Paragraph 82 - The plaintiffs in this case have universally suffered restrictions on movement through the house arrest (shelter in place) order issued by the State of Ohio against its citizens without due process. While this order has since been lifted it has been repeatedly threatened again and remains on the State Coronavirus Dashboard as a possibility.

    c. Page 64, Part 1(e) – "Plaintiff Renz had plans to travel over the summer that he was unable to fulfill due to prohibitions on travel that substantially interfered with this fundamental right."

    d. Page 65, Part 2(c) – "During the business shutdown client's right to bear arms was substantially burdened by the arbitrary and capricious closure of stores dealing in arms."

42. Defense brings up *U.S v. Salerno* 481 U.S. 739 (1987) in discussing a facial attack. In that case the respondents alleged that the Bail Reform Act was unconstitutional on its face thus making it a facial attack. That has not happened here.

43. Plaintiffs have alleged that numerous Constitutional and other violations have occurred and that those actions caused injury. This is not a facial attack. At trial Plaintiffs will further develop the facts of the case but have already made clear by numerous "short and plain" statements in the affidavits that were incorporated into the complaint as well as the complaint itself that there is a causal relationship between the actions of the Defense and the injury of the Plaintiffs.

44. It is incredibly interesting that the State brings up the "facial attack" as part of what is apparently a 12(b)1 motion. The 9th Circuit explains a facial attack stating, "A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014). The fact that this approach is being taken is an amazing admission from the State and further demonstrates the need for this case to go forward. With the State accepting as true that no emergency exists, the idea that a dismissal on misstated procedural grounds could occur on such an important issue would be nothing short of a miscarriage of justice.

## The Actual State of the Law

45. As discussed in the complaint, it is no surprise that the Defense would rely on *Jacobson* as the core of its defense on the merits. What is surprising is that it would spend so much time on it in a 12b motion.

46. Plaintiffs have briefly discussed in the complaint that *Jacobson* was meant to be a narrow ruling that had an extremely limited reach. The Court in *Jacobson* noted:

    e. ""Before closing this opinion, we deem it appropriate, in order to prevent misapprehension as to our views, to observe -- perhaps to repeat a thought already sufficiently expressed, namely -- that the police power of a State, whether exercised by the legislature or by a local body acting under its authority, may be exerted in such circumstances or by regulations so arbitrary and oppressive in particular cases as to justify the interference of the courts to prevent wrong and oppression."[4]

47. The Court plainly states that the ruling was not meant to bar further review: "We now decide only that the statute covers the present case, and that nothing clearly appears that would justify this court in holding it to be unconstitutional and inoperative in its application to the plaintiff in error." *Id.*

48. Arguably as importantly as the fact that *Jacobson* itself has been so misconstrued are the rulings since *Jacobson*. The State brings up a plethora of District and Circuit Court cases but only one Supreme Court case – *South Bay United Pentecostal Church v. Gavin Newsom*, 590 U. S. ____ (2020). As noted in the complaint, even the Supreme Court was misled about the fact of that case and the decision was undoubtably based, in part, on that reality. We do not accept that the facts of that case were properly before the Court and also ask substantially different questions of the Court.

49. Plaintiffs also believe the Courts were not properly informed on the current state of the law in that case. The *Jacobson* ruling has been substantially limited since the time of its

---

[4] <u>Jacobson v. Mass.</u>, 197 U.S.11(U.S. 1905)

issuance, though no one seems to have noted this. In *Planned Parenthood v. Casey,* 505 U.S. 833, the Court stated:

f.   *Roe*, however, may be seen not only as an exemplar of *Griswold* liberty but as a rule (whether or not mistaken) of personal autonomy and bodily integrity, with doctrinal affinity to cases recognizing limits on governmental power to mandate medical treatment or to bar its rejection. If so, our cases since *Roe* accord with *Roe's* view that a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims. *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278, 111 L. Ed. 2d 224, 110 S. Ct. 2841 (1990); cf., *e. g., Riggins v. Nevada*, 504 U.S. 127, 135, 118 L. Ed. 2d 479, 112 S. Ct. 1810 (1992); *Washington v. Harper*, 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990); see also, *e. g., Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952); *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30, 49 L. Ed. 643, 25 S. Ct. 358 (1905).

50. To reiterate – "a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims." It must be noted that the Court actually cites *Jacobson* in its justification for this quote.

51. If a State's interest in the protection of life falls so short of being able to override individual liberties that it may not be used to prevent the killing of a fetus, how then can the state possibly argue that it may forgo individual liberties in an attempt to force ineffective and unproven methods of preventing and/or treating a disease that has a 99.996% overall recovery rate?

52. To further support Plaintiffs' position that the overly broad reading of *Jacobson* does not apply we point the Court to *Roman Catholic Diocese of Brooklyn, New York v. Andrew M Cuomo, Governor of New York,* 592 U. S. ____ (2020). Within that case there was  again no challenge as to whether or not COVID-19 presents a compelling interest which is one of the challenges included here. Despite that, the Court held that the restrictions on religious institutions in New York violated equal protection standards and were unconstitutional. Plaintiffs included a similar challenge against the Defendants here.

53. More generally the holding was that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U. S. 347, 373 (1976) And that strict scrutiny still applies to such restrictions regardless of whether an emergency exists. This clearly indicates that a case and controversy exist as it applies to questions pertaining to the Constitutional authority of the Defendants as laid out in this case.

54. In a concurring opinion Justice Gorsuch very pointedly notes:

> What could justify so radical a departure from our First Amendment's terms and long-settled rules about its application? Our colleagues offer two possible answers. Initially, some point to a solo concurrence in South Bay Pentecostal Church v. Newsom, 590 U. S. ___ (2020), in which THE CHIEF JUSTICE expressed willingness to defer to executive orders in the pandemic's early stages based on the newness of the emergency and how little was then known about the disease. Post, at 5 (opinion of BREYER, J.). At that time, COVID had been with us, in earnest, for just three months. Now, as we round out 2020 and face the prospect of entering a second calendar year living in the pandemic's shadow, that rationale has expired according to its own terms. Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical. Rather than apply a nonbinding and expired concurrence from South Bay, courts must resume applying the Free Exercise Clause. Today, a majority of the Court makes this plain.
>
> Not only did the South Bay concurrence address different circumstances than we now face, that opinion was mistaken from the start. To justify its result, the concurrence reached back 100 years in the U. S. Reports to grab hold of our

decision in Jacobson v. Massachusetts, 197 U. S. 11 (1905). But Jacobson hardly supports cutting the Constitution loose during a pandemic. That decision involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction.

55. After other relevant discussion, Justice Gorsuch then goes on to say in regards to

*Jacobson*:

    g.  "That was the first case South Bay cited on the substantive legal question before the Court, it was the only case cited involving a pandemic, and many lower courts quite understandably read its invocation as inviting them to slacken their enforcement of constitutional liberties while COVID lingers."

    And:

    h.  "Why have some mistaken this Court's modest decision in Jacobson for a towering authority that overshadows the Constitution during a pandemic? In the end, I can only surmise that much of the answer lies in a particular judicial impulse to stay out of the way in times of crisis. But if that impulse may be understandable or even admirable in other circumstances, we may not shelter in place when the Constitution is under attack. Things never go well when we do."

    And finally:

    i.  "It is time—past time—to make plain that, while the pandemic poses many grave challenges, there is no world in which the Constitution tolerates color-coded executive edicts that reopen liquor stores and bike shops but shutter churches, synagogues, and mosques."

56. While the Defense seems to take issue with statements that appear conclusory it is difficult to imagine that, under the relevant standards for this case, let alone 12b motions, that the Defense has demonstrated that this case should be dismissed.

57. As a matter of law, rational speculation is not the proper standard here. The Supreme Court has clearly stated that the standards of scrutiny apply regardless of the existence of an emergency which renders the Sixth Circuit opinion overruled. Plaintiffs would object to judicial notice being given in regards to the idea that "… countries across the world and each of the fifty states have adopted comparable restrictions to combat the virus…" This statement is overly broad and factually incorrect as the response has been extremely varied with many of the areas that have taken less draconian steps seeing far better results than those taken by the Defendants. Further,  it has been ruled that facts presented in opposition but not in the complaint cannot be considered in a motion to dismiss. *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015). Also, the 6th Circuit has held, ""[i]f a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

58. Finally, we respond to the Defense's notion that this is about Plaintiff's or [bizarrely] Plaintiff's Counsel's approach to how this should have been handled. Nowhere and at no time has anyone from the Plaintiffs side offered thoughts on how COVID-19 should be handled. The only position the Plaintiff's and their Counsel have taken is that the response should have been legal and done in a way that did not violate the rights of the Plaintiffs in this case.

## Standards for 12b(6)

59. While the State does not specifically state the grounds for dismissal on the merits it appears that motions to dismissed are based on rule 12b(6).

60. In regards to 12b(6) motions, the 6th Circuit has stated that, ""A motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).

61. The Defendants bear the burden of showing that no adequate claim for relief has been presented. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016); *Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016); *Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016) ("Rule 12(b)(6) places this burden on the moving party"); *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014); see Moore's Federal Practice - Civil § 12.34[1]. In ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in favor of the non-moving party, accept the plaintiff's factual allegations as true, and determine whether plaintiff's factual allegations present plausible claims. *Bowman v. U.S.,* 564 F.3d 765, 769 (6th Cir., 2008).

62. For the Defense to be successful they may only meet this burden by demonstrating that the facts do not show the claim has substantive plausibility. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347, 190 L. Ed. 2d 309, 310 (2014); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

63. As noted above, in ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in favor of the plaintiff, accept the plaintiff's factual allegations as true, and determine whether plaintiff's factual allegations present plausible claims. *Bowman v. U.S.,* 564 F.3d 765, 769 (6th Cir., 2008). If, as laid out in the complaint, the Defendants have misled the public as to the dangers of this disease, the Defendants have taken numerous actions that have violated both Constitutional and other rights of citizens under the false pretense of an emergency, and the taking of these actions caused injury (which

is frequently presumed when Constitutional rights are violated *Roman Catholic Diocese of Brooklyn, New York v. Andrew M Cuomo, Governor of New York,* 592 U. S. _____ (2020) and *Tanzin v. Tanvir.* 592 U.S. _ (2020) then how can the Defendants suggest that there is no plausible claim?

64. For the reasons set forth herein Plaintiffs humbly request that the Motions to dismiss be denied.


We respectfully thank the Court for its consideration.

Respectfully submitted,


_____/s Thomas Renz_____

ATTORNEY
Thomas Renz
Bar ID: 98645
1907 W State St. #162
Fremont, OH 43420
Phone: 419-351-4248



AND


Robert J. Gargasz, Esq.
SCR #0007136
Robert J. Gargasz Co., LPA
1670 Cooper Foster Park Road
Lorain, OH 44053
Phone (440) 960-1670
Fax (440) 960-1754
Email: rjgargasz@gmail.com