**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL B. RENZ, et al.,** | : | |
| Plaintiffs, | : | Case No. 3:20-cv-1948 |
| v. | : | Judge James G. Carr |
| **GOVERNOR MIKE DEWINE, et al.,** | : | |
| Defendants. | : | |

**REPLY OF DEFENDANTS STATE OF OHIO, GOVERNOR MIKE DEWINE, AMY ACTON AND LANCE HIMES IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**I.**         **INTRODUCTION**

*"Nearly nine months, and quickly approaching a full year, into this global pandemic, we are all fatigued. We have not been able to hug our loved ones, attend school or work in-person, or frequent our favorite restaurants and local businesses. All of our lives have changed drastically, and, indeed, many of us are weary of continued mitigation efforts. <u>But our Constitution does not permit us to consider such frustrations without concrete, particularized, and non-hypothetical allegations that are capable of full resolution by this court.</u> The present lawsuit expresses real and significant constitutional concerns—which we do not take lightly. As an Article III court, we have an obligation to tackle justiciable constitutional violations head-on, including during proclaimed emergencies. But some legal actions, no matter how well-intended and no matter how passionately litigated, cannot be adjudged by a court of limited jurisdiction. This is one of those cases."*

[Parker v. Wolf, 2020 U.S. Dist. LEXIS 233348, at *47-48 (M.D. Pa. Dec. 11, 2020) (emphasis added)]

These comments apply with equal force to this case.  No matter how passionately Plaintiffs may believe their rights have been violated by Ohio's efforts to curb the deadly

COVID-19 pandemic, Plaintiffs simply have not asserted a plausible claim upon which relief may be granted within this Court's subject matter jurisdiction for which they have standing.

Plaintiffs' opposition to the State Defendants' motion to dismiss boils down to two equally-unavailing strategies: (1) to argue that this Court should ignore controlling Supreme Court precedent and (2) to mischaracterize their own Amended Complaint. By way of this reply, we briefly recap each of the reasons why Plaintiffs' claims must be dismissed, and we explain why Plaintiffs have no valid response to the many shortcomings of their Amended Complaint identified in the motion to dismiss.

## II.     LAW AND ANALYSIS

### A.     All Claims Against The State Of Ohio Are Barred By Sovereign Immunity.

As noted in the motion to dismiss, the State of Ohio must be dismissed from this action as a Defendant because "the State of Ohio is *immune* from suit in federal court under the Eleventh Amendment to the United States Constitution." Shabazz v. Ohio, 2020 U.S. Dist. LEXIS 28944, at *3 (S.D. Ohio Feb. 20, 2020) (emphasis added). Specifically, "[t]he state of Ohio is immune from suit under [42 U.S.C.] § 1983 unless the state has waived its Eleventh Amendment sovereign immunity or Congress abrogated that immunity." Oliver v. Ohio State Hwy. Patrol, 2019 U.S. Dist. LEXIS 114494, at *3 (N.D. Ohio July 10, 2019) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, (1989)). "Congress did not abrogate a state's Eleventh Amendment immunity for actions brought pursuant to § 1983, and the state of Ohio has not waived its immunity." Id.

In response, Plaintiffs concede that the case law holds that the State of Ohio is immune from suit in federal court. [Memo in Opp. (Doc. 39) pg. 6] Plaintiffs simply ask the Court to

2

ignore controlling case law, which, obviously, this Court is not at liberty to do. The State of Ohio is entitled to dismissal of all claims asserted against it.

### B. All Claims For Monetary Relief Fail As A Matter Of Law.

Next, we argued that all claims against the state official Defendants (Governor DeWine, and former and interim Directors of Ohio Department of Health ("ODH"), Acton and Himes) must be dismissed because these Defendants have not been sued in their personal capacities. See Cook v. Davis, 2020 U.S. Dist. LEXIS 99013, at *5 (N.D. Ohio June 5, 2020) ("Plaintiff's claims for monetary damages against Defendant in his official capacity fail as barred by the Eleventh Amendment."); Harnden v. State Dept. of Human & Health Servs., 2018 U.S. App. LEXIS 5649, at *3 (6th Cir. Mar. 5, 2018).

Plaintiffs' only response is to disingenuously contend that the state official Defendants "were included individually and are being sued both as representatives of the state and in their individual capacities." [Memo in Opp. (Doc. 39) pg. 13] But tellingly, Plaintiffs cannot identify where in there Amended Complaint they asserted claims against these Defendants in their personal capacities *because they never did*. As the masters of their own complaint, "[P]laintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities." Soper by Soper v. Hoben, 195 F.3d 845, 853 (6th Cir.1999)). Despite Plaintiffs' best efforts to rewrite history, they cannot escape the fact that they failed to sue the state official Defendants in their individual capacities, and as a result their claims for monetary damages must be dismissed.[1]

---

[1] Even if Plaintiffs had sued Defendants DeWine, Acton and Himes in their individual capacities, they would be protected from a claim for monetary relief by qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sweeting v. Schweigtzer, 2019 U.S. Dist. LEXIS 115964, at *7 (S.D. Ohio July 12, 2019). "Qualified immunity not only insulates government

### C.     **Plaintiffs Have No Claims For Prospective Relief Against Defendant Acton.**

Plaintiffs may only pursue claims for *prospective* relief. As noted by the Southern District of Ohio, "official-capacity § 1983 claims are limited to prospective injunctive relief." Mitchell v. Ohio State Univ., 2020 U.S. Dist. LEXIS 160824, at *18 (S.D. Ohio Sep. 3, 2020). Since Dr. Acton is the *former* Director of ODH, [Am. Cmpl., at unnumbered paragraph following ¶9], Plaintiffs have no claim against Dr. Acton for prospective relief.

Plaintiffs' only response is to double down on their unsupported contention that they sued Dr. Acton in her individual capacity. As noted above, neither the Amended Complaint nor the case law supports Plaintiffs in this regard. Inasmuch as Dr. Acton was only sued in her official capacity, Plaintiffs have no claim against her for prospective relief. Dr. Acton is entitled to dismissal of all claims asserted against her.

### D.     **This Court Lacks Jurisdiction To Hear Plaintiffs' State Law Claims.**

Next, we asserted that Plaintiffs' various state law theories (counts two through seven, nine and ten) must be dismissed because "the Supreme Court has made clear that *federal courts* cannot enjoin *state officials* from violating *state law*." Ladd v. Marchbanks, 971 F.3d 574, 582 (6th Cir. 2020) (emphasis added). This Court lacks subject matter jurisdiction over claims to enjoin state officials to comply with state law, and this is true even if supplemental jurisdiction otherwise exists. Smith v. DeWine, 2020 U.S. Dist. LEXIS 137012, at *26 (S.D. Ohio Aug. 3, 2020) ("This conclusion applies even if . . . supplemental jurisdiction otherwise exists."); Otte v. Kasich (In re Ohio Execution Protocol Litigation), 709 F.App'x 779, 782-783 (6th Cir. 2017).

---

officials from individual liability for money damages, but from the burdens and expenses of litigation and trial." Id. at *7-8. And, "[q]ualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." Id. at *8. Here, Plaintiffs cannot credibly claim that the State Defendants violated any clearly established rights when they took action to protect Ohioans in the midst of a rapidly spreading, unprecedented pandemic. Indeed, Plaintiffs assert (no less than three times) that this is a case of *first impression*. [Am. Cmpl. ¶¶ 9, 123, and 143]

Plaintiffs' only response is to cite the diversity jurisdiction statute and assert that "State law claims are properly before this Court under 28 USCS § 1332." [Memo in Opp. (Doc. 39) pg. 15]  However, a lawsuit between citizens of Ohio and Ohio government officials is not within the Court's diversity jurisdiction.  Plaintiffs' state law claims must be dismissed.

### E. This Court May Not Issue An Advisory Opinion Regarding Hypothetical Future Health Orders.

Next we noted that Plaintiffs have improperly asked this Court to issue an advisory opinion preemptively invalidating any future health orders that may be issued in response to COVID-19.  Specifically, among the forms of relief requested by Plaintiffs is a request that this Court "[g]rant permanent injunctive relief *against future actions* taken under the guise of this *or any other public health* emergencies that violate legislative or Constitutional rights without meeting the appropriate standards of review under established law or precedent."  [Am. Compl. (Doc. 21), ¶ 8.8 (emphasis added); see also id. at Count 8 (pg. 55)]  As explained in the motion to dismiss, Plaintiffs' request for the Court to invalidate hypothetical future health orders constitutes an improper request for an advisory opinion that fails to state a ripe controversy and would exceed this Court's limited jurisdiction to hear "cases" and "controversies."

Plaintiffs respond again by engaging in revisionist history by recasting their complaint as seeking only "injunctive relief against the emergency declaration as it pertains to COVID-19," [Memo in Opp. (Doc. 39) pg. 16], even though this argument flies in the face of Plaintiffs' own request for relief which plainly sought broad injunctive relief against all "future actions" relating to COVID-19 or any other conceivable future health emergency.  It is not clear why Plaintiffs seek to tie the hands of Ohio's health officials who may be faced with future health crises, but that is beside the point because this Court lacks jurisdiction to issue an advisory opinion on

5

hypothetical abstract legal questions.[2] Bay Mills Indian Community v. Whitmer, 794 F.App'x 485, 486 (6th Cir. 2019) ("[c]ourts should avoid passing on questions of public law … that are not immediately pressing, and '*an advisory opinion' describing what the law would be based on hypothetical facts cannot be extracted from a federal court*") (emphasis added).

The Court should decline Plaintiffs' invitation to issue an improper advisory opinion.

### F. Plaintiffs Lack Standing To Pursue Claims Based Upon Conduct Of Non-Parties.

Next, we argued that Plaintiffs claims premised upon conduct by non-parties should be dismissed. Most of Plaintiffs' factual allegations relate to issues they experienced when non-parties acted on their own volition.[3] For example, many of the Plaintiffs complain about being

---

[2] Plaintiffs' argument that they only seek "injunctive relief against the emergency declaration as it pertains to COVID-19" misses the larger point. The health orders challenged by Plaintiffs have been issued by ODH pursuant to its authority under R.C. 3501.13 and R.C. 3501.14(A) and do not depend on the presence or absence of an "emergency declaration." R.C. 3701.14(A) states that ODH's Director "*shall* investigate … as to the cause of disease or illness, including … *pandemic*, … and *take prompt action to control and suppress it*." (Emphasis added.) R.C. 3701.13 confers power upon ODH to "mak[e] special or standing orders or rules … *for preventing the spread of contagious or infectious diseases*." (Emphasis added.) *Neither of these statutes requires an "emergency declaration" for ODH to act*.

[3] Affidavit of Tara Calderaros (Doc. 2-2), ¶7a ("Costco eye center refuses to see us, will not honor mask exemptions."); see also Affidavit of Lisa Knapp (Doc. 11) ¶ 7 (describing "mask shaming"); Renee Hedges (Doc. 2-2) ¶7 (describing issues with being forced to wear a mask that occurred before Ohio instituted any mask mandates; describing issues resulting from Cleveland mask ordinance); Jessica Franz (Doc. 2-2) ¶11c (describing doctor's office challenging sincerity of religious views regarding mask wearing); id. at ¶11e (describing college not accepting medical exemption request from non-party adult son of plaintiff); id. at ¶11i-l (denial of service at various retail establishments due to refusal to wear masks); id. at ¶11n ("My kids and I have been harassed, even at places that have publicly stated they are accepting exemptions…. We have endured eye-rolling, snide remarks, lectures, sighs and glares from employees and managers who think we should be wearing a mask."); Affidavit of Kristen Beckman, (Doc. 2-2) ¶10-11 ("Menards started imposing restrictions that no children under the age of 16 could enter their store…. Costco was the next big store to mandate masks for entry."); id. at ¶12 ("[Our main church was] reopening, but sadly were requiring masks for all to attend. Several members attacked me, claiming things like I was an insensitive, asymptomatic carrier, who was going to kill grandma."); id. at ¶14 (describing having to make "unfortunate decision to stay home" rather than travel to New York City for a funeral Plaintiff and her family might not be able to attend

6

required to wear a mask to enter a business even though Ohio's health orders exempt Plaintiffs from the mask-wearing requirement due to their asserted medical condition. Similarly, Plaintiffs' claim premised upon alleged violation of the right religious expression relates to a Plaintiff's *church's decision* to require those attending service to wear a mask. [See Affidavit of Kristen Beckman, ¶ 12 (PAGEID 80-81) ("[Our main church was] reopening, but sadly were requiring masks for all to attend. Several members attacked me, claiming things like I was an insensitive, asymptomatic carrier, who was going to kill grandma.").

In order to have standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and *not … th[e] result [of] the independent action of some third party not before the court*." Vapor Technology Assn. v. United States FDA, 2020 U.S. App. LEXIS 31586, at *13 (6th Cir. Oct. 5, 2020) (emphasis added) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

A recent decision in the COVID-19 context provides a useful illustration. In Lawrence v. Polis, 2020 U.S. Dist. LEXIS 236713 (D. Colo. Dec. 4, 2020), the plaintiff asserted that Colorado's health orders unconstitutionally deprived him of his right to work for the restaurant that employed him. The court dismissed this claim for lack of standing because the plaintiff was really complaining about the actions of his employer, not the public health officials who issued the health orders:

---

due to funeral home's limitation on number of attendees); Affidavit of Kirsten Hill (Doc. 2-2) ¶3d ("I was unwarrantably shamed in a public meeting in the Amherst Township Hall…."); Affidavit of Eric Calderaros (Doc. 2-2) ¶24 ("since the governor's mask mandate and the State's continued inducement of panic to most Ohioans, including retailers, we have been deprived of these freedoms because all retailers now require masks, many retailers will discriminate against us by not honoring our medical exemptions from masks, and even when they do honor our medical exemptions, it's often at the expense of having to endure public ridicule and shaming….").

> Defendants' public-health orders do not prohibit [Plaintiff's] employer from remaining open during the pandemic, even under the orders' most onerous set of restrictions…. While [Plaintiff's] employer has chosen to remain closed because the restaurant is not profitable operating under the restrictions imposed by the orders, that independent decision by his employer breaks the chain of causation between Defendants' orders and [Plaintiff's] injury. See Henry v. DeSantis, 461 F. Supp. 3d 1244, 1252-53 (S.D. Fla. 2020) (plaintiff laid off from food-service job during COVID-19 failed to show traceability because public health orders did not compel restaurants to close completely or direct them to lay off employees); Murphy v. Lamont, [2020 U.S. Dist. LEXIS 136961] (D. Conn. Aug. 3, 2020) (plaintiff whose homeschool group chose not to meet during COVID-19 pandemic did not show traceability where executive orders encouraged but did not require private schools to close).

[Id. at *27-28]

So, too, here, if there are retail establishments who are requiring Plaintiffs to wear masks notwithstanding an exemption under Ohio's mask order, then that does not give rise to a claim against the State Defendants. Any order that could be issued in this case would not prevent businesses and churches from continuing to require their patrons to wear masks. Plaintiffs' claims, if valid against any defendant, are claims that must be asserted against parties who are not before this Court.[4]

### G. Plaintiffs' Conclusory Allegations Are Insufficient To Plausibly State A Federal Claim.

We next explained that Plaintiffs' Amended Complaint fails to meet the pleading standard of Twombly and Iqbal because it offers nothing more than conclusory allegations about the impact of Ohio's response to COVID-19 on the Plaintiffs themselves. In response, Plaintiffs

---

[4] Plaintiffs' opposition raises a related standing issue. Plaintiffs now contend that they asserted a claim based upon "[h]ouse arrest for elderly relatives in nursing homes." [Memo in Opp. (Doc. 39) pg. 4] Plaintiffs do not have standing to assert claims based upon injuries supposedly suffered by non-parties. Moody v. Michigan Gaming Control Bd., 847 F.3d 399, 402 (6th Cir. 2017) ("A plaintiff may assert his own legal rights and interests, but generally, a litigant may not sue to protect the constitutional rights of a third party.")

8

respond in conclusory fashion, asserting that the Amended Complaint and its attached affidavits, "describe[] in detail" how "[e]ach Plaintiff was injured in numerous ways, including through Constitutional violations."  [Memo in Opp. (Doc. 39), pg. 3]  But where are these supposed details?  Plaintiffs certainly cannot identify where these supposedly detailed allegations were made in the Amended Complaint or affidavits because Plaintiffs do not cite to a specific location in any of their papers where they've actually described in any sort of detail how the Plaintiffs were impacted by the State Defendants' actions.[5]  By failing to identify where in the record Plaintiffs have pled any of their claims consistent with the plausibility standard, Plaintiffs tacitly admit their Amended Complaint is deficient and subject to dismissal.

### H. Plaintiffs' Federal Claims Fail On The Merits.

Finally, we noted that even if Plaintiffs had sufficiently pled their federal constitutional theories to satisfy the Rule 8 pleading standard, those claims would nonetheless fail on the merits.  We prefaced our discussion of the merits with a discussion of the disfavored nature of facial attacks, a point which only merits a footnote here.[6]  We then turned to the litany of cases that have upheld the constitutionality of public health orders aimed at preventing the spread of COVID-19.

As noted, "a chorus of judicial voices"[7] has upheld COVID-19-related health measures in reliance upon the Supreme Court's decision in <u>Jacobson v. Massachusetts</u>, 197 U.S. 11 (1905) which holds that such public health measures must be upheld unless they have "no real or

---

[5]  For example, the Amended Complaint alleges that "Plaintiff Renz had plans to travel over the summer that he was unable to fulfill due to prohibitions on travel that substantially interfered with this fundamental right."  But where did Plaintiff Renz intend to go? Somewhere in Ohio or outside of Ohio?  What disrupted his plan? Was it a hotel that voluntarily chose to not be open due to the pandemic? Was he planning on seeing a baseball game at every Major League ballpark, but had to cancel because MLB decided to not have fans at its games?  What is clear is that his vacation plans were not disrupted by any action by the State Defendants because none of the health orders incorporated by reference into the complaint prohibited travel over the summer.

substantial relation" to protecting public health and impose "beyond all question, a plain palpable invasion of rights secured by the fundamental law." Jacobson, 197 U.S. at 31. After we filed our motion to dismiss, the Supreme Court had the opportunity to revisit Jacobson, and the Court did not overturn this longstanding precedent:

> Since this [COVID-19] crisis began, Jacobson has been cited positively and negatively by Justices of the Supreme Court in both concurrences and dissents, … and until the Supreme Court overrules Jacobson, this *Court is bound by stare decisis to apply Jacobson* harmoniously with the precedent developed under the tiers of scrutiny….
>
> [Delaney v. Baker, 2021 U.S. Dist. LEXIS 1567, at *32-33 (D. Mass. Jan. 6, 2021) (emphasis added) (citing Roman Catholic Diocese v. Cuomo, ___U.S.___, 208 L.Ed.2d 206 (2020); South Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613 (2020))[8]]

---

[6]  As set forth in the motion to dismiss, a facial attack on the constitutionality of government action "is the most difficult challenge to mount successfully" and will only succeed if a litigant can "establish that no set of circumstances exists under which the [statute or order] would be valid." United States. v. Salerno, 481 U.S. 739, 745 (1987). Plaintiffs' response misapprehends this point. Plaintiffs cite Leite v. Crane Co., 749 F.3d 1117 (9th Cir. 2014), a case that deals with a different type of "facial attack"—a type of motion to dismiss for lack of subject matter jurisdiction that asserts that a complaint fails to invoke the jurisdiction of the court even if all allegations are assumed to be true (which is distinguished from a "factual attack" Rule 12(b)(1) motion which relies upon evidence outside of the pleadings to dispute the factual allegations to demonstrate a lack of subject matter jurisdiction). Plaintiffs simply fail to appreciate (or dispute) that their facial attack to the constitutionality of Ohio's COVID-19 health orders is "disfavored for several reasons." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450-451 (2008).

[7]  League of Indep. Fitness Facilities & Trainers, Inc., v. Whitmer, 2020 U.S. App. LEXIS 19691 (6th Cir., June 24, 2020)

[8]  Plaintiffs' response is to argue that the numerous courts across the country that have relied upon Jacobson have all gotten it wrong, and they argue this Court should not rely on Jacobson. But "[t]his is a district court, and it must follow binding precedent when such precedent exists." D'Ambrosio v. Bagley, 688 F. Supp. 2d 709, 721 (N.D. Ohio 2010). This Court is simply not at liberty to decide which binding decisions it will follow and which ones it will not, as Plaintiffs suggest.

Indeed, the legal theories advanced by Plaintiffs have been rejected by other Courts.

- Plaintiffs alleged that "[d]uring the business shutdown client's right to bear arms was substantially burdened by the arbitrary and capricious closure of stores dealing in arms," [Memo in Opp. (Doc. 39) pg. 18], but this same legal theory was dismissed with prejudice in McDougall v. Cty. of Ventura, 2020 U.S. Dist. LEXIS 196777, at *22 (C.D. Cal. Oct. 21, 2020) ("The Court finds the stay well at home orders do not substantially burden the Second Amendment. The stay well at home orders are analogous to and less restrictive than the waiting periods upheld in Silvester, 843 F.3d at 827, because the stay well at home orders are temporary, do not specifically target Second Amendment activities for restriction, and do not impose a categorical ban on the ownership of arms.").

- Plaintiffs' contention that Ohio's health orders violated their "right to travel" fare no better than the claim dismissed in Lawrence v. Polis, 2020 U.S. Dist. LEXIS 236713, at *24 (D. Colo. Dec. 4, 2020) ("Because Mr. Lawrence has failed to state a claim for violation of his right to interstate or intrastate travel, his right to travel claim must be dismissed.").[9]

- Similarly, in Stewart v. Justice, 2020 U.S. Dist. LEXIS 220373, at *18 (S.D. W.Va. Nov. 24, 2020), the court rejected the same argument made by Plaintiffs here, that the

---

[9] Plaintiffs' assertion in their opposition brief that they asserted a claim based on "[i]nability to freely travel … to attend funeral of relative due to quarantine restrictions upon returning (Beckman)" is a complete mischaracterization of the Amended Complaint and affidavits. Plaintiff Beckerman stated in her affidavit that the reason she did not attend the funeral in question was due to the *New York funeral home's* restriction on attendees. [Affidavit of Kristen Beckman ¶ 14 (PAGEID 81-82) (describing having to make "unfortunate decision to stay home" rather than travel to New York City for a funeral she and her family might not be able to attend due to funeral home's limitation on number of attendees)]

11

    state's stay-at-home order "violate the fundamental right to intrastate travel and their freedom of movement."

- And, as noted in <u>Shelton v. City of Springfield</u>, 2020 U.S. Dist. LEXIS 201127, at *9 (W.D. Mo. Oct. 28, 2020), "Plaintiff's allegations of her 'fear of harassment' does not constitute an allegation of a deprivation of a constitutional right."

- One claim not seen in prior cases, due to its absurdity, is Plaintiffs' assertion of "[d]iscrimination in being deprived of goods and services which were available to people who complied with the mask wearing mandates, in violation of the Equal Protection Clause." [Memo in Opp. (Doc. 39) pg. 3] To be clear, Plaintiffs are asserting that they were discriminated against *because they refuse to comply with the law*. That is tantamount to a plaintiff who refuses to wear a seat belt arguing that he has been denied equal protection of the law because he is not permitted to drive without a seatbelt while law abiding citizens are allowed to drive while wearing a seatbelt. In any event, Plaintiffs' equal protection theory does not identify a suspect classification and is therefore subject to rational basis review, which Plaintiffs cannot overcome. <u>See</u> <u>League of Indep. Fitness Facilities & Trainers, Inc., v. Whitmer</u>, 2020 U.S. App. LEXIS 19691 (6th Cir., June 24, 2020).

    At bottom, Plaintiffs wish to use this action as a means of establishing that COVID-19 is not as dangerous as some might believe. But Plaintiffs miss the point. The question is not whether the ever-evolving scientific understanding of COVID-19 was, in retrospect, 100% accurate. As the Sixth Circuit made clear in <u>League of Indep. Fitness Facilities & Trainers, Inc., v. Whitmer</u>, <u>supra</u>, the State need only possess rational speculation to supports its remedial efforts. The fact that countries across the world and each of the fifty states have adopted

comparable restrictions to combat the virus, as to which this Court can take judicial notice,[10] readily satisfies this standard. Thus, even if all of the facts alleged in the Amended Complaint about the danger of the COVID-19 pandemic were accepted for the sake of argument, that would not negate the fact that Ohio had a rational basis to take the actions it took to protect the lives of Ohioans. Whether under Jacobson or under traditional constitutional tiers of scrutiny, Plaintiffs fail to assert a cognizable claim.

### III. CONCLUSION

For all these reasons, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

DAVE YOST, Ohio Attorney General

/s/ Marion H. Little, Jr.
John W. Zeiger (0010707)
Marion H. Little, Jr. (0042679)
SPECIAL COUNSEL
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 S. High Street
Columbus, Ohio 43215
Telephone: (614) 365-9900
Facsimile: (614) 365-7900
zeiger@litohio.com
little@litohio.com

*Counsel for Defendants State of Ohio, Governor Mike DeWine, Amy Acton, Former Director of the Ohio Department of Health, and Lance D. Himes, Interim Director of the Ohio Department of Health*

---

[10] Plaintiffs' contention that the Court may not consider matters for which it may take judicial notice when ruling on a Rule 12(b)(6) motion is wrong. See, e.g., Solo v. UPS Co., 819 F.3d 788, 794 (6th Cir. 2016) (when considering a 12(b)(6) motion, "[t]he court consider[s] the complaint in its entirety, as well as ... documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

13

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 15, 2021, a copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)

1230-022:888712